UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/21/10

1:10-cv-4699-RJH
(On appeal from Bankr. No. 08-13555)

In re LEHMAN BROTHERS
HOLDINGS INC., et al.,

**ORDER**

Debtors.

Richard J. Holwell, District Judge:

SunCal has moved for emergency relief pursuant to Fed. R. Bankr. P. 8005 pending the

appeal of two orders in Lehman's New York bankruptcy proceeding. The motion is denied for

the following reasons.

SunCal contends that two recent orders in the Lehman New York Bankruptcy will

prejudice its own bankruptcy proceedings in California. One order approves a transaction (the

"transaction approval" order), and the other finds that the transaction will result in an automatic

stay of certain claims[1] in SunCal's California bankruptcy proceedings (the "stay order").[2]

---

[1] The claims are for equitable subordination of Lehman's secured credit relating to certain loans. The loans (totaling $1.5 billion) relate to a number of enormous stalled real estate ventures in California. SunCal wants to equitably subordinate the loans so that it can pay off unsecured creditors (contractors, etc.) and hopefully resume work on the ventures. These loans are apparently not currently owned by Lehman Commercial Paper, but rather by a third party, Fenway, although that is subject to a repurchase agreement and the picture thus muddled. The California Court, in any event, found that they were only owned by Fenway, although Judge Peck below apparently thinks that may have been an error. As far as the California Court is concerned because they are owned by Fenway they are not currently subject to the stay. The proposed transaction would include, *inter alia*, sale of the loans to Lehman Commercial Paper, which is in Chapter 11, where they would potentially be subject to the automatic bankruptcy stay (unless a court found reason to exclude them).

1

SunCal alleges that the stay of claims in California would do harm justifying emergency relief. But, the parties have themselves stipulated to a 60 day stay of all aspects of SunCal's California bankruptcy proceedings. (App.'s Rep. 6.) Thus, any damage to be done there will not occur until day 61.

This Court can decide the full appeal within those 60 days. Assuming it does, for purposes of this emergency application the only possible irreparable harm is one that the Court could now prevent but that would be powerless to stop when deciding the full appeal (after the transaction has been consummated). To win an emergency stay pending appeal, a litigant must demonstrate: (1) that it would suffer irreparable injury if a stay were denied; (2) that there is a substantial possibility, although less than a likelihood, of success on the merits of movant's appeal; (3) that other parties would suffer no substantial injury if the stay were granted; and (4) that the public interest favors a stay. *In re General Motors Corp.*, 409 B.R. 24, 30 (Bankr. S.D.N.Y. 2009). There is some ambiguity as to whether the factors are balanced or whether an applicant must satisfy all of them: although the moving party must "show satisfactory evidence on all four criteria," *In re Turner*, 207 B.R. 373, 375 (2d Cir. BAP 1997), "the Circuit and more recent cases have engaged in a balancing process with respect to the four factors." *General Motors*, 207 B.R. at 375 (assuming without deciding that the balancing approach is the more appropriate). In any case the burden is "heavy" and "difficult" to meet. *Id.*; *United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F. 3d 1082, 1084 (2d Cir. 1995). The Court will follow the lead of *General Motors* and apply the balancing approach, although it does not decide the issue and does not believe the choice of approach is dispositive in this case.

---

[2] It is not completely clear to what extent the bankruptcy court made a conclusive ruling on the applicability of the stay, but the Court need not reach that issue to dispose of SunCal's emergency motion with respect to the stay order.

## A. Stay Order

With respect to the stay order, no irreparable harm is alleged. If SunCal succeeds on appeal and this Court finds that the stay is inapplicable to the California claims or should be lifted for some other reason, then the stay will not operate come day 61 and there will have been no harm. The effect of this Court's decision on the stay order will be identical whether it issues it now or in 60 days. Not only is there no possibility of irreparable harm, but the expected harm would not even befall applicant until after the appeal is complete. In a case such as this the irreparable harm factor weighs heavily against emergency relief.

Even assuming, *arguendo*, that SunCal has demonstrated a substantial possibility of success on the stay appeal, on balance emergency relief would be inappropriate. In light of the fact that the stay will not be applied until after the appeal, neither the public interest nor the effect on other parties militates in SunCal's favor. Considered alongside the lack of an irreparable harm to speak of, emergency relief is inappropriate with respect to the stay order.

## B. Transaction Approval Order

With respect to the transaction approval order, the Court notes that SunCal alleges harm only as a result of the operation of the automatic stay connected to the transaction. It does not allege that the transaction will cause harm independent of that stay. But, if the Court later finds that the transaction should not have been approved, one of the available remedies will be to except the SunCal proceedings from the automatic stay. *See* 11 U.S.C. §362(d)(1) (providing for relief from the stay "for cause…"); *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990) (explaining discretionary nature of stay). *See also In re Saxon Indus., Inc.*, 43 B.R. 64, 67

3

(Bankr.S.D.N.Y. 1984) (equitably adjusting automatic stay); *In re Wedtech Corp.*, 87 B.R. 279, 289 (Bankr.S.D.N.Y. 1988 (same). Since the potential for harm from the transaction can be mitigated thusly, the irreparable harm factor does not weigh in favor of emergency relief.

Nor has SunCal demonstrated that it has a substantial likelihood of success in its appeal from the transaction approval order. SunCal's principal argument is that the transaction was negotiated in bad faith, but it has presented no evidence that the settlement was not "negotiated in good faith" and is not in the "best interests of the estate." *See, e.g., In re Adelphia Communications Corp.*, 364 B.R. 518, 524 (Bankr.S.D.N.Y.2007) ("the legal standard for determining the propriety of a bankruptcy settlement is whether the settlement is in the best interests of the estate"); *In re Healthco Intern., Inc.*, 136 F.3d 45, 53 (1st Cir. 1998) ("The best interests standard under Bankruptcy Rule 9019 contemplates a determination by the bankruptcy court as to whether the proposed settlement was negotiated in good faith.") Although the Court wonders whether the compromising parties' expressed intent to lessen litigation costs might qualify as bad faith, SunCal has cited no case-law supporting its contention that it does. The principle case SunCal cites on this topic did not reject a transaction on the basis of bad faith, but rather declined to apply a bankruptcy stay to post-petition acquired property—the very remedy the Court expects will be available when deciding the full appeal. *See In re Matter of Brannan*, 40 B.R. 20, 24-25 (Bankr.N.D.Ga. 1984). SunCal also argues that the transaction approval order violates the stay in SunCal's California bankruptcy, but that argument is premised on the transaction leading to a stay. That result is not inexorable and this argument is more appropriate for the appeal from the stay order. Furthermore, SunCal did not assert this argument below and cannot assert it here. *See Wal-Mart Stores, Inc.*, 396 F.3d 96, 124 n. 29 (2d Cir. 2005).

4

Accordingly SunCal has not demonstrated a substantial likelihood of success on the merits of its appeal from the transaction approval order.

The harm to the public and to debtors here also weighs against granting SunCal's motion with respect to the transaction approval order. This "temporary" relief could potentially derail a complex transaction negotiated at arms length by multiple parties, one which will reduce administrative burdens, remove an uninterested middle-man from this dispute and, as Judge Peck found, help bring the Lehman bankruptcy closer to resolution. It would thus harm both the public and the debtors. Considered along with the lack of irreparable harm and low likelihood of success on the merits, either of which would be dispositive alone, emergency relief is inappropriate with respect to the transaction approval order.


SO ORDERED.


Dated: New York, New York
        June 21, 2010

Richard J. Holwell
United States District Judge