District Court Case No.  10-CV-4699

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

In re: LEHMAN BROTHERS HOLDINGS INC, et al.,
Jointly Administered Debtors and Debtors-in-Possession,

SunCal Communities I LLC, SunCal Communities III LLC,
SCC/Palmdale LLC, Acton Estates LLC, SunCal Beaumont Heights LLC,
SunCal Emerald Meadows LLC, SunCal Johansson Ranch LLC, SunCal
Bickford Ranch LLC, SunCal Summit Valley LLC, Seven Brothers LLC,
Kirby Estates LLC, SJD Partners Ltd., SJD Development Corp.,
SCC Communities LLC, North Orange Del Rio Land LLC and Tesoro SF LLC,

Appellants,

vs.

Lehman Commercial Paper Inc., Lehman Brothers Holding, Inc.,

Appellees.

**OPENING BRIEF RE APPEAL OF ORDER APPROVING DEBTORS' MOTION
PURSUANT TO BANKR. RULE 9019 FOR AUTHORITY TO COMPROMISE
CONTROVERSY IN CONNECTION WITH A REPURCHASE TRANSACTION
WITH FENWAY CAPITAL, LLC AND A COMMERCIAL PAPER
PROGRAM WITH FENWAY FUNDING, LLC**

On Appeal from the Order of the United States Bankruptcy Court
for the Southern District of New York

| | |
|---|---|
| **WINTHROP COUCHOT PROFESSIONAL CORPORATION**<br>660 Newport Center Drive, Fourth Floor<br>Newport Beach, CA 92660<br>Telephone: (949) 720-4100<br>Facsimile: (949) 720-4111<br>Sean A. O'Keefe – NY Bar No. 1980853,<br>           CA Bar No. 122417<br>Paul J. Couchot – CA Bar No. 131934<br>General Insolvency Counsel for the SunCal<br>Appellants | **MILLER BARONDESS, LLP**<br>1999 Avenue of the Stars, Suite 1000<br>Los Angeles, CA 90067<br>Telephone: (310) 552-4400<br>Facsimile: (310) 552-8400<br>Louis R. Miller – CA Bar No. 54141<br>Martin H. Pritikin -- CA Bar No. 210845<br><br>Special Litigation Counsel for SunCal<br>Appellants |

# TABLE OF CONTENTS

**PAGE**

I.  JURISDICTIONAL STATEMENT .................................................................... 1

II.  STATEMENT OF ISSUES ............................................................................... 1

III.  APPLICABLE STAND OF REVIEW .............................................................. 2

IV.  PROCEDURAL HISTORY ............................................................................... 2

V.  SUMMARY OF ARGUMENTS ........................................................................ 4

VI.  SUMMARY OF FACTS ................................................................................... 5
  A.  The SunCal Debtors ............................................................................. 5
  B.  The Lehman Chapter 11 Filings ........................................................... 6
  C.  The SunCal Debtors' First New York RFS Motion ............................... 6
  D.  The California Stay Finding .................................................................. 7
  E.  The ES Action ...................................................................................... 7
  F.  The SunCal Debtors' Discovery of Fenway's Ownership
       of the Loans ......................................................................................... 8
  G.  The SunCal Debtors' Motion to Strike ................................................. 8
  H.  Fenway's Inclusion in the Equitable Subordination Action ................... 9
  I.  The Lehman Entities' Competing Plan of Reorganization .................... 9
  J.  The Ninth Circuit BAP Reverses the Stay Finding .............................. 9
  K.  The Compromise Motion Filed by LCPI and LBHI .............................. 9
  L.  The SunCal Appellants' Relief from Stay Motion ................................ 11
  M.  The SunCal Appellants' Appeal ............................................................ 12

VII.  ARGUMENT ................................................................................................... 12
  A.  The Lower Court Lacked the Power to Invade the
       Exclusive Jurisdiction of the California Bankruptcy Court ................... 12
  B.  The Lower Court Lacked the Power to Grant Injunctive
       Relief, Directly or Indirectly ................................................................ 16
  C.  The Compromise Motion and the Compromise Order
       Violated the SunCal Appellants' Automatic Stay ................................. 18
  D.  The Lower Court Did Not Use or Correctly Apply the
       Operative Legal Standard ..................................................................... 20
  E.  The Compromise Order Approved a Transaction That
       Was Designed to Achieve a Bad Faith Objective ................................. 22
  F.  The Findings of Fact Are Contrary to the Evidence ............................ 23

VIII.  CONCLUSION ............................................................................................... 25

MAINDOCS-#148614-v1-SCC-Palmdale_SDNY_Appellants_Brief.DOC

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Benton v. Callaway,*
165 F.2d 877 (5th Cir. 1948) ............................................................................ 12

*Bohack,*
599 F.2d 1160 ....................................................................................................... 22

*Chesley v. Union Carbide Corp.,*
927 F.2d 60 (2d Cir. 1991)................................................................................... 15

*DiTolla v. Doral Dental IPA of N. Y.,*
469 F.3d 271 (2d Cir.2006)..................................................................................... 2

*Donovan v. Robbins,*
752 F.2d 1170 (7th Cir.1985) .............................................................................. 20

*Eastern Refractories Co., Inc. v. Forty Eight Insulations Inc.,*
157 F.3d 169 (2d Cir.1998).............................................................................. 5, 19

*EEOC v. Federal Reserve Bank of Richmond,*
698 F.2d 633 (4th Cir.1983) .................................................................................. 5

*F.D.I.C. v. Wrapwell Corp.,*
922 F.Supp. 913 (S.D.N.Y. 1996) ....................................................................... 14

*Gallucci,*
931 F.2d 743 ......................................................................................................... 18

*Gardner v. New Jersey,*
329 U.S. 565 (1947).............................................................................................. 12

*Germain v. Connecticut Nat'l Bank,*
988 F.2d 1323 (2d Cir. 1993)............................................................................... 13

*Granfinanciera v. Nordberg,*
492 U.S 33 (1989)................................................................................................. 13

*Hanover Ins. Co. v. U.S.,*
279 F.Supp. 851 (S.D.N.Y. 1967) ....................................................................... 24

*Highland Capital Management, L.P. v. Schneider,*
551 F.Supp.2d 173 (S.D.N.Y.2008)....................................................................... 7

## TABLE OF AUTHORITIES

### (Continued)

**PAGE**

*Hsu By and Through Hsu v. Roslyn Union Free School Dist. No. 3,*
   85 F.3d 839 (2d Cir. 1996)......................................................................................... 2

In *Eller,*
   929 F.Supp. 369 .......................................................................................................... 15

*In re 48th Street Steakhouse, Inc.,*
   835 F.2d 427 (2d Cir.1987)......................................................................................... 20

*In re Adelphia Communications Corp.,*
   307 B.R. 404 (Bankr.S.D.N.Y. 2004) ....................................................................... 15

*In re All Season's Kitchen, Inc.,*
   145 B.R. 391400 (Bankr.D.Vt.1992) ......................................................................... 14

*In re Best Payphones, Inc.,*
   279 B.R. 92 (Bankr.S.D.N.Y.2002) ........................................................................... 20

*In re CBI Holding Co., Inc.,*
   529 F.3d 432 (2d Cir. 2008)........................................................................................ 13

*In re Dow Corning Corp.,*
   255 B.R. 445 (E.D.Mich.2000) .................................................................................. 16

*In re Excel Innovations,*
   502 F.3d 1086 (9th Cir. 2007) ..................................................................................... 1

*In re Greene,*
   50 B.R. 785 (S.D.N.Y. 1985)...................................................................................... 19

*In re Jacobson,*
   402 B.R. 359 (Bankr.W.D.Wash. 2009) ...................................................................... 7

*In re Johns-Manville Corp.,* 517 F.3d 52 (2d Cir.2008),
   *vacated & remanded on other grounds,* --- U.S. ----, 129 S.Ct. 2195,
   174 L.Ed.2d 99 (2009), *aff'd in part & rev'd in part,* 600 F.3d 135 (2d Cir.2010) ................ 16

*In re Masters Mates & Pilots Pension Plan and IRAP Litigation,*
   957 F.2d 1020 (2d Cir. 1992)................................................................................ 5, 20

*In re Millennium Seacarriers, Inc.,*
   419 F.3d 83 (2d Cir. 2005)............................................................................ 4, 13, 14, 15

MAINDOCS-#148614-v1-SCC-Palmdale_SDNY_Appellants_Brief.DOC

## TABLE OF AUTHORITIES

### (Continued)

*In re PRS Ins. Group, Inc.*, 2005 WL 3527032 (Bankr.D.Del. 2005) and
  *Eller Industries, Inc. v. Indian Motorcycle Manufacturing*, Inc.,
  929 F.Supp. 369 (D.Colo. 1995) ............................................................................. 15

*In re S.G. Phillips Constructors, Inc.*,
  45 F.3d 702 (2d Cir. 1995) ............................................................................... 13, 21

*Kalb v. Feuerstein*,
  308 U.S. 433, 60 S. Ct. 343, 84 L. Ed. 370 (1940) ................................................ 20

*Kline v. Burke Const. Co.*,
  260 U.S. 226, 23543 S.Ct. 79 (1922) ...................................................................... 15

*Matter of Zale Corp.*,
  62 F.3d 746 (5th Cir. 1995) ..................................................................................... 17

*National Tax Credit Partners, L.P. v. Havlik*,
  20 F.3d 705 (7th Cir. 1994) ..................................................................................... 19

*Nicely v. McBrayer, McGinnis, Leslie & Kirkland*,
  163 F.3d 376 (6th Cir.1998) .................................................................................... 19

*Old Wayne Mut. L. Assoc. v. McDonough*,
  204 U.S. 8, 27 S.Ct. 236 (1907) .............................................................................. 20

*Pepper v. Litton*,
  308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939) .................................................. 13

*Renz v. Beeman*,
  589 F.2d 735 (2d Cir. 1978) ...................................................................................... 2

*Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.)*,
  68 F.3d 26 (2d Cir.1995) ......................................................................................... 13

*Rexnord Holdings, Inc. v. Bidermann*,
  21 F.3d 522 (2d Cir.1994) ....................................................................................... 19

*S.E.C. v. Credit Bancorp, Ltd.*,
  290 F.3d 80 (2d Cir. 2002) ........................................................................................ 1

*Sampsell v. Imperial Paper & Color Corp.*,
  313 U.S. 215 (1941) ................................................................................................. 13

**TABLE OF AUTHORITIES**

(Continued)

*In re Enron Corp.*,
   2003 WL 230838 (S.D.N.Y.2003) ................................................................................... 1

*Shannon R. Ginn Const. Co. v. Reliance Ins. Co.*,
   51 F.Supp.2d 1347 (S.D.Fla. 1999) ........................................................................ 24

*Sharp v. Hawkins*,
   2004 WL 2792121 (N.D.CA. 2004) ........................................................................ 13

*Tennessee Student Assistance Corp. v. Hood*,
   541 U.S. 440 (2004)...................................................................................... 4, 12, 13

*Travelers Indemnity Co v. Bailey*,
   129 S.Ct. 2195 (2009) ............................................................................................ 17

*U.S. Fidelity and Guar. Co. v. Thomas Solvent Co.*,
   955 F.2d 1085 (6th Cir.1992) ................................................................................ 16

*U.S. v. Wood*,
   290 F. 109 (2d Cir. 1923)...................................................................................... 15

*United States Fidelity Co. v. Bray*,
   225 U.S. 205, 32 Sup.Ct. 620, 56 L.Ed. 1055................................................... 15

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir.1982), *cert. denied*, 464 U.S. 818 (1983).......................... 20


**Statutes**

11 U.S.C. § 105.............................................................................................. 17, 18
11 U.S.C. § 362(a) ............................................................................................... 18
11 U.S.C. § 362(a)(1)..................................................................................... 18, 19
11 U.S.C. § 362(a)(3)..................................................................................... 18, 19
11 U.S.C. § 362(a)(4)........................................................................................... 18
11 U.S.C. § 362(a)(6)........................................................................................... 18
11 U.S.C. § 365 .................................................................................................... 24
11 U.S.C. § 510(c)................................................................................................... 7
11 U.S.C. § 541(a)(7)........................................................................................... 18
28 U.S.C. § 157 ...................................................................................................... 1
28 U.S.C. § 157(b)(2)(k)..................................................................................... 13
28 U.S.C. § 158(a)(1)............................................................................................. 1

### TABLE OF AUTHORITIES

#### (Continued)

**PAGE**

28 U.S.C. § 1334.................................................................................................................. 1
28 U.S.C. § 1334(e)(1)................................................................................................... 4, 12

**Other Authorities**

Financial Institutions Reform, Recovery and Enforcement Act of 1989........................................ 14

**Rules**

Fed.R.Civ.P. 65................................................................................................................ 17, 18

MAINDOCS-#148614-v1-SCC-Palmdale_SDNY_Appellants_Brief.DOC

SunCal Communities I LLC, et.al. (collectively, the "SunCal Appellants") hereby submit their *Opening Brief* in the instant appeal.

## I.      JURISDICTIONAL STATEMENT

The SunCal Appellants appeal that certain *Order Approving Debtors' Motion Pursuant To Bankruptcy Rule 9019 For Authority To Compromise Controversy In Connection With A Repurchase Transaction With Fenway Capital, LLC And A Commercial Paper Program With Fenway Funding, LLC* entered by the United States Bankruptcy Court (the "Bankruptcy Court") on May 13, 2010 (Docket No. 9030). The bankruptcy court asserted jurisdiction over the underlying matters pursuant to 28 U.S.C. §§ 157 and 1334, and the standing order referring all proceedings under Title 11 to the bankruptcy court. The jurisdiction of this Court is based upon 28 U.S.C. § 158(a)(1). An order approving a compromise is a final appealable order. *Saylor v. Lindsey*, 456 F. 2d 896 (S.D.N.Y. 1972); *In re Enron Corp.,* 2003 WL 230838 (S.D.N.Y.2003). The SunCal Appellants also contend that the Compromise Order (defined herein) is a disguised injunction, with an indefinite term. This renders the order immediately appealable on separate grounds. *S.E.C. v. Credit Bancorp, Ltd.,* 290 F.3d 80, 87 (2d Cir. 2002); *In re Excel Innovations,* 502 F.3d 1086, 1092 (9th Cir. 2007) ("We hold that the injunction granted by the bankruptcy court constitutes an appealable final decision.").

## II.     STATEMENT OF ISSUES

The following issues are presented for review: Issue 1 - Whether the relief granted in the Compromise Order exceeded the lower court's jurisdiction?; Issue 2 - Whether the Compromise Order is void?; Issue 3 – Whether the lower court used the proper standard in ruling on the Compromise Motion (defined herein)?; Issue 4 - Whether the lower court correctly applied the proper standard in ruling on the Compromise Motion?; Issue 5 – Whether the Compromise Order should be set aside on the grounds that it approved a motion filed in bad faith?; and Issue 6 – Whether the following findings  made in the Compromise Order were clearly erroneous:

A.      LCPI will have repurchased the Repo Assets pursuant to the MRA;

B.   LBHI is fully subrogated to the claims of Fenway against LCPI to the full extent of any payment by LBHI in respect of such claims; and

C.   LBHI shall succeed to any and all liens and security interests with respect to the Repo Assets and any interest therein asserted by Fenway under the Fenway Repo and/or the Fenway Documents (which liens and security interests shall remain in effect notwithstanding any subsequent transfer by LCPI of any of the Repo Assets or any interest therein), in the same priorities as held by Fenway Capital or Fenway Funding, to secure LBHI's subrogated claims, which liens and security interests shall hereby be deemed assigned transferred by Fenway Capital and Fenway Funding to LBHI" is in error.

## III.   APPLICABLE STANDARD OF REVIEW

Issues 1 through 4 above are issues of law governed by the *de novo* standard of review, *DiTolla v. Doral Dental IPA of N. Y.,* 469 F.3d 271, 275 (2d Cir.2006). Issue 5 presents a mixed issue of fact (whether the transaction was designed to achieve a bad faith objective) and law. However, since a good faith finding was not made in support of the Compromise Order, this Court is entitled to review the record *de novo. Hsu By and Through Hsu v. Roslyn Union Free School Dist. No. 3,* 85 F.3d 839, 848 fn. 1 (2d Cir. 1996). Issue 6 presents an issue of fact subject to the clearly erroneous standard of review. *Renz v. Beeman,* 589 F.2d 735, 740 (2d Cir. 1978).

## IV.   PROCEDURAL HISTORY

In November of 2008, the SunCal Appellants and fifteen other related SunCal entities (collectively the "SunCal Debtors") filed petitions under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Central District of California (the "California Bankruptcy Court"). Lehman Brothers Holdings, Inc. ("LBHI") and Lehman Commercial Paper, Inc. ("LCPI"), the appellees, filed petitions under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York, in September and October of 2008, respectively.  Appendix ("*Appx*") 1 at 3.

In March of 2009, LCPI and non-debtor Lehman affiliates, Lehman ALI, Inc. ("Lehman ALI"), Northlake Holdings, Inc. ("Northlake"), and OVC Holdings, Inc. ("OVC") (together the "Non-Debtor Lehman Entities") filed thirteen claims[1] (the "Disputed Claims") against the

---

[1] LCPI filed seven claims, Lehman ALI filed four claims and Northlake and OVC each filed one claim.

MAINDOCS-#148614-v1-SCC-Palmdale_SDNY_Appellants_Brief.DOC

bankruptcy estates of one or more of the SunCal Appellants. *Appx. 11, at 621-630.* The Disputed Claims are based upon seven loans (the "Disputed Loans") that are secured by liens against one or more of the development projects owned by the SunCal Debtors.

Although the Disputed Claims were owned by Fenway Capital, LLC ("Fenway") until the recent closing of transaction at issue in this appeal, from November of 2008 through June of 2009, Lehman ALI, LCPI, OVC and Northlake (the "Lehman Entities") falsely represented to the California Bankruptcy Court and the SunCal Appellants that they owned the Disputed Loans. *Appx. 11, at 621-630.* On the basis of this claim of ownership (of three of the loans), LCPI repeatedly interfered with the SunCal Appellants' reorganization effort by asserting that its automatic stay barred any attempt to resolve the priority of these loans. *Appx. 21.* In May of 2009, the SunCal Appellants discovered that Fenway owned the Disputed Loans. In June of 2009, the California Bankruptcy Court ruled that ownership of the Disputed Loans and Claims was indeed vested in Fenway and that LCPI's claim of ownership was false. *Appx. 11, at 621-630.*

For the past eighteen months, the SunCal Debtors have been attempting to resolve the priority of the Disputed Claims through an equitable subordination action that is pending before the California Bankruptcy Court (the "ES Action"). *Appx. 21, at 1642,* Fenway is the primary defendant in the ES Action. *Appx. 11, at 845-926.* The other defendants are Non-Debtor Lehman Entities. LCPI and LBHI are not defendants.

In April of 2010, LCPI and LBHI filed that certain *Motion Pursuant To Bankruptcy Rule 9019 For Authority To Compromise Controversy In Connection With A Repurchase Transaction With Fenway Capital, LLC And A Commercial Paper Program With Fenway Funding, LLC* (the "Compromise Motion"). *Appx. 1.* In summary, the Compromise Motion provided for the sale of the Disputed Claims from a *non-debtor,* Fenway, to a debtor, LCPI (the "Claims Transaction"). The SunCal Appellants' filed an opposition to the Compromise Motion wherein they objected to the transaction only to the extent that LCPI intended, post-closing, to appear in the SunCal Appellants cases and thwart the resolution of the Disputed Claims, by asserting its automatic stay.

*Appx. 3*. In response to this objection, LCPI and LBHI admitted that the transaction would have the injunctive effect the SunCal Appellants feared. *Appx. 6*.

In response to the Lehman Entities' "injunction-by-contract" litigation ploy, the SunCal Appellants filed a motion seeking confirmation from the lower court that LCPI's and LBHI's automatic stay would not affect their ongoing effort to resolve the priority of the Disputed Claims through the ES Action (the "RFS Motion") in the California Bankruptcy Court. *Appx. 10*. Alternatively, they prayed for an order granting them relief from whatever stay the lower court deemed applicable. *Id*. At the hearing on the RFS Motion, which immediately followed the hearing on the Compromise Motion, the lower court explicitly ruled that a stay would arise upon the closing of the transaction described in the Compromise Motion and that this stay would indeed deprive the SunCal Appellants and the California Bankruptcy Court of the ability to resolve the priority of the Disputed Claims through the ES Action - indefinitely. *Appx. 23, at 1853 (ln. 14)*.

On May 13, 2010, the lower court entered an order approving the Compromise Motion (the "Compromise Order"). *Appx. 24*. On May 17, 2010, the lower court entered an order denying the RFS Motion (the "RFS Order"). *Appx. 25*. On May 27, 2010, the SunCal Appellants filed timely notices of appeal with respect to the Compromise Order and the RFS Order. *Appx. 26 & 27*. On June 16, 2010, the lower court denied the SunCal Appellants' motion for stay pending appeal. On June 21, 2010, this Court denied the SunCal Appellants' motion for stay pending appeal, but authorized an expedited briefing and hearing schedule on the appeal. *Appx. 42*.

## V.    SUMMARY OF ARGUMENTS

The California Bankruptcy Court has exclusive *in rem* jurisdiction over the SunCal Appellants' property. 28 U.S.C. § 1334(e)(1). This jurisdictional grant includes the power to determine validity, priority and extent of all liens and claims asserted against the property of the debtors. *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 448 (2004) ("A bankruptcy court's *in rem* jurisdiction permits it to "determin[e] all claims that anyone, whether named in the action or not, has to the property or thing in question."); *In re Millennium Seacarriers, Inc.*, 419 F.3d 83 (2d Cir. 2005). The Compromise Order, by design and effect, usurped the California

Bankruptcy Court's exclusive jurisdictional grant, by depriving that court of the power to resolve the priority of the liens and claims asserted by LCPI against the SunCal Appellants' properties. The lower court lacked both the jurisdiction and power to grant this relief.

The lower court's order violates the SunCal Appellants' automatic stay and consequently it is void. *Eastern Refractories Co., Inc. v. Forty Eight Insulations Inc.,* 157 F.3d 169, 172 (2d Cir.1998) (automatic stay is effective immediately upon filing of bankruptcy petition, and any subsequent proceedings against debtor or debtor entities are void.").

The lower court did not use the proper legal standard when reviewing the Compromise Motion. Specifically, it failed to consider the harm that this transaction would inflict upon the SunCal Appellants. *See In re Masters Mates & Pilots Pension Plan and IRAP Litigation,* 957 F.2d 1020, 1025 (2d Cir. 1992) ("[I]f third parties complain to a judge that a 'decree will be inequitable because it will harm them unjustly, he cannot just brush their complaints aside.'"). The lower court also failed to properly *apply* the fair and equitable standard when approving the Compromise Motion. The lower court should have weighed the impact of the Claims Transaction on the SunCal Appellants to determine whether the severe harm that would be inflicted upon these innocent third parties by the settlement was necessary to obtain the benefits of the transaction, and whether or not this harm could be mitigated. This was clear error.

Finally, the findings made by the lower court regarding the nature of the transaction being approved and the effect of the transaction were not based upon the evidence, and in fact were directly contrary to the evidence. This was clear error. *See EEOC v. Federal Reserve Bank of Richmond,* 698 F.2d 633, 639-41 (4th Cir.1983).

## VI.   SUMMARY OF FACTS

A.   **The SunCal Debtors.**  The SunCal Debtors were formed to develop large residential real estate projects (the "Projects"). Between 2005 and 2007, Lehman ALI and LCPI (together with OVC Holdings LLC and Northlake Holdings LLC, the "Lehman Entities") made a series of loans to the SunCal Debtors to fund the development of the Projects. *See Appx 12, at 938.* Seven Disputed Loans, totaling approximately $1.6 billion, are relevant to this appeal. *Id.* Two of

the Disputed Loans were originally made by LCPI: The SunCal I Loan in the approximate amount of $343 million (the "SunCal I Loan") and the Ritter Ranch Loan in the approximate amount of $287 million (the "Ritter Ranch Loan").[2] *Appx. 11, at 627-628*. Three loans were originally made by *non-debtor* Lehman ALI (the "Lehman ALI Loans") and two loans (one each) were originally made by Lehman ALI and subsequently transferred to non-debtor Lehman affiliates Northlake and OVC. All of the Disputed Loans are secured by liens against one or more of the Projects. All of these loans were later sold to Fenway. *Id.*

The defensive challenges that the SunCal Appellants' are asserting to the Disputed Loans in the California Bankruptcy Court arise out of a wrongful course of conduct that was pursued by the Lehman Entities prepetition, when they controlled the loans. *Appx. 12, at 938.* In summary, when market conditions slowed in 2007 and 2008, the Lehman Entities insisted that development work at the Projects continue apace, notwithstanding the SunCal Appellants' mounting cash flow problems. *Id.* The SunCal Appellants complied with these demands based upon the Lehman Entities' promise to pay the vendor bills being incurred at their direction. In 2008, the Lehman Entities reneged on their promises of payment, and instead attempted to foreclose on the Projects. *Id.* This forced the SunCal Appellants into Chapter 11 and left them with the burden of over $100 million in unpaid vendor claims. *Id.*

**B.    The Lehman Chapter 11 Filings.**  LBHI filed for bankruptcy in September 2008. LCPI filed for bankruptcy in October 2008. *Appx 1 at 3.*

**C.    The SunCal Debtors' First New York RFS Motion.** After the SunCal Appellants' Chapter 11 filings, the Lehman Entities intervened and opposed even the most basic relief, including the right to use cash collateral. *Appx. 21, at 1638-39.* In support of these seriatim objections, LCPI falsely represented that it continued to own the Ritter Ranch Loan and the SunCal I Loan and that any attempt to use property subject to the liens securing these loans was barred by its automatic stay. *Appx. 21, 1638 -44.* In fact, it was later discovered (and adjudicated)

---

[2] LCPI made a third loan, the SCC Palmdale Loan in the approximate amount of $95 million (the "SCC Palmdale Loan") that is an irrelevant mezzanine loan.

that these loans had been sold to Fenway, in August of 2008, pursuant to that certain Master Repurchase Agreement (the "MRA"). *Appx. 11, at 621-630.*

In the face of LCPI's insistence that its automatic stay effectively barred the SunCal Appellants from pursuing their reorganization effort, the SunCal Appellants filed a prophylactic motion in LCPI's case seeking relief from stay, *to the extent it applied. Appx. 21, 1636-38.* LCPI opposed this motion, again falsely representing that it owned the above loans, and insisting that the stay be maintained to protect its non-existent ownership rights. The lower court accepted LCPI's representations and denied relief from stay. *Appx. 21, at 1636-1637, ¶¶ 13-16, and 1669-1679.*

**D.    The California Stay Finding.** In January of 2009, LCPI filed seven motions for relief from the automatic stay in the California Bankruptcy Court (the "California Stay Motions"). *Appx. 21, at 1640.* In six of the California Stay Motions, LCPI again falsely represented that it owned the loans that had been sold to Fenway, four months earlier. *Id.* This critical fact, which rendered the motions fatally defective[3], was not disclosed to the California Bankruptcy Court. *Id.* In reliance upon the SunCal Appellants' ignorance of the facts, LCPI argued that the application of its automatic stay essentially made the made the SunCal Appellants plan effort, which was premised upon the subordination of the Disputed Loans, futile. *Id.; see also Appx. 11, at 644-45.*

The California Bankruptcy Court rejected this argument and held that the pursuit of the ES Action against the claims affirmatively filed by LCPI in the SunCal Appellants' case, whether through an adversary proceeding and/or plan of reorganization, would not violate LCPI's purported stay (the "Stay Finding"). *Appx. 11, at 644-45.* LCPI appealed the Stay Finding to the Ninth Circuit BAP. *Appx. 21, at 1641.*

**E.    The ES Action.** On January 6, 2009, the SunCal Appellants filed a complaint against various non-bankrupt Lehman-affiliates, including Lehman ALI and its successors, seeking the equitable subordination of their claims in the ES Action. *Appx. 21, at 1642.* Initially, the

---

[3] *Highland Capital Management, L.P. v. Schneider*, 551 F.Supp.2d 173., 195 (S.D.N.Y.2008) ("Rule 17(a) requires that "every action shall be prosecuted in the name of the real party in interest."); A party cannot file a motion for relief from stay with respect to claims that it does not hold. *See In re Jacobson*, 402 B.R. 359, 366 (Bankr.W.D.Wash. 2009).

SunCal Appellants did not name LCPI as a defendant in the ES Action, due to its status as a debtor. *Id.* However, in reliance on the Stay Finding, the ES Action was amended in March 2009 to add LCPI as a defendant in connection with what the SunCal Debtors mistakenly believed were the LCPI-owned loans. *Id.* Consistent with the Stay Finding, the amended ES Action did not seek damages from LCPI, but only the right to equitably subordinate the claims that LCPI filed against the SunCal Debtors, and to void and/or transfer to the estates the liens associated with those claims. *Id.*

      **F.**    **The SunCal Debtors' Discovery of Fenway's Ownership of the Loans.** In April of 2009, after the RFS Motions were denied, the SunCal Appellants discovered that two of the three loans that LCPI claimed to own (the Ritter Ranch Loan and the SunCal I Loan), three of the loans that Lehman ALI claimed to own, and the two loans held by OVC and Northlake (collectively the "Sold Loans") had been sold to Fenway pursuant to the MRA. *Appx. 11, at 621-630.* Accordingly, from August 22, 2008 until the recent closing of the Claims Transaction, neither LCPI nor LBHI owned any interest in the Disputed Loans, and every statement or pleading that affirmatively represented a contrary position was a misrepresentation. *Id.*

      **G.**    **The SunCal Debtors' Motion to Strike.** After the SunCal Debtors discovered that LCPI did not own any interest in the Disputed Loans, they filed a motion (the "Motion To Strike") to strike the proofs of claim ("POCs") filed with respect to Disputed Claims. *Appx. 11, at 621-630.* At the June 30, 2009 hearing on the Motion to Strike, the California Bankruptcy Court found that the Lehman Entities had transferred *their entire interest* in the Disputed Loans to Fenway, *id.*, and that the Lehman Entities had made a "misrepresentation" when they asserted in the POCs that they, alone, were the creditors who owned the Disputed Loans. *Appx. 11, at 630.* These rulings, which were later incorporated into a series of findings and an order (the "Claims Order"), *Appx. 11, at 621-630,* were entitled to issue preclusion in the lower court. However, the lower court insisted that it was not bound by these findings. *Appx. 41, at 2398 (lines 21-25); 2399 (lines 1-3).*

**H.**     **Fenway's Inclusion In The Equitable Subordination Action.** In reliance on the Claims Order, the SunCal Debtors filed an amended complaint in the ES Action naming Fenway, the owner of the Disputed Loans, as a defendant. *Appx. 21, at 1642.*

**I.**     **The Lehman Entities' Competing Plan of Reorganization.** In early 2009, the SunCal Appellants and certain affiliated entities filed their Plan of Reorganization (the "SunCal Plan") in the California Bankruptcy Court. Appx. 21 at 1641 ¶ 31. The SunCal Plan provides for the subordination of the Disputed Claims. In September of 2009, the Lehman Entities filed a competing Plan of Reorganization (the "Lehman Plan") in that court. *Appx 11 at 842; Appx. 21 at 1644, ¶ 39; Appx. 11, 744-45.* The Compromise Order, according to LCPI, bars the SunCal Appellants from pursuing the SunCal Plan, but allows the Lehman Plan to move forward.

**J.**     **The Ninth Circuit BAP Reverses The Stay Finding.** On December 15, 2009, a divided two-to-one Ninth Circuit Bankruptcy Appellate Panel reversed the Stay Finding (the "BAP Order").[4] The SunCal Appellants have appealed this ruling to the Ninth Circuit. The BAP Order had minimal impact on the SunCal Appellants' cases, since at that point it had been established that the Disputed Loans were held by non-debtor Lehman Entities and Fenway. In March of 2010, the California Bankruptcy Court dismissed LCPI from the ES Action on the basis of the BAP Order. *Appx. 21. At 1645, ¶46.* This eliminated any possible LCPI stay issues.

**K.**     **The Compromise Motion Filed By LCPI and LBHI.**  In April of 2010, LCPI and LBHI filed the Compromise Motion. *Appx. 1.* Although LCPI and LBHI characterized the underlying transaction as the "compromise" of certain issues relating to the repurchase transaction described in the MRA (the "Repo"), in reality the transaction was an entirely new post-petition purchase and sale transaction. *Appx. 1, at 9* ("LCPI will repurchase the Repo Assets from Fenway Capital"). In sum, Fenway agreed to sell the Disputed Claims to LCPI, and as part of the exchange of consideration, the parties agreed to terminate the MRA and the associated contracts. *Id.* This transaction was designed to allow Fenway to get out of the ES Action, *Appx. 1, P. 6, ¶ 14,* and to

---

[4] *Lehman Commercial Paper, Inc. v. Palmdale Hills Pro., LLC (In re Palmdale Hills Prop., LLC)*, 423 B.R. 655 (9th Cir. BAP 2009) (hereinafter, "BAP Ruling").

allow LCPI to force its way back into the ES Action, and then to stay the same through the assertion of its automatic stay. *Appx. 6, at 85* ("But this argument ignores a key fact – LCPI's automatic stay will attach to the property it receives as part of the Transaction as a matter of law, regardless of LCPI's intent."). Since lower court ruled that the above transaction was "pursuant to the MRA", a brief explanation of the MRA and the Claims Transaction is in order. This will explain why this "pursuant to the MRA" (Appx. 24) finding is not only contrary to the evidence, but posits an impossibility.

      Pursuant to the MRA, Fenway acquired the Disputed Loans, *Appx. 11, at 628, ¶1.9, at 630 ¶ 2.4,* and LCPI agreed to repurchase these loans, in cash, for over a billion dollars, within several months. *Appx. 11, 794, ¶ 7* (repurchase price payable in "immediately available funds"). LCPI's repurchase obligation was backed by a guarantee from LBHI (the "Guarantee"). *Appx. 1, at 4-5.* After acquiring the Disputed Loans, Fenway issued a promissory note (the "VFN Note") to Fenway Funding, LLC ("Fenway Funding"), a related entity, which was backed by the Disputed Loans. *Id.* In reliance upon the VFN Note, Fenway Funding issued commercial paper notes (the "CP Notes"), which were acquired by LBHI. *Id.* LBHI then pledged the CP Notes to JP Morgan Chase ("JP Morgan"), its primary lender. *Appx. 1, at 4-5.* **The Claims Transaction obviously did not comply with or act "pursuant to" the foregoing structure. It eliminated the underlying transaction**. *Appx. 1, at 10.*[5] The motion clearly states that title to the Disputed Claims will be vested in LCPI and all of the following contracts will be "terminated": The CP Notes, VFN Note, Guarantee and the MRA. *Id.*

      After the original Compromise Motion was filed, LBHI and LCPI filed a new proposed form of order that purported to clarify the transaction terms. *Appx. 13.* This new order stated that Fenway was assigning the liens provided for in the MRA to LBHI to secure LBHI's subrogation rights under the Guarantee. *Id. at 944.* This last minute redo of the transaction was obviously

---

[5] "The parties will agree that **notwithstanding anything to the contrary in the Fenway Documents** or otherwise, the return of the CP Notes to Fenway Funding and the subsequent termination of the VFN Note will constitute full payment of the repurchase price under the MRA and full and fair consideration for the repurchase transaction." *Appx. 1, P. 10* (emphasis added).

thrown together to give LBHI the right to argue that its automatic stay would block any effort by the SunCal Appellants to subordinate the Sold Loans, even if LCPI transferred title to the loans formerly owned by Lehman ALI, OVC and Northlake back to these non-debtor entities. *Appx. 17, at 1599* ("Thus, despite the fact that the five SunCal Loans at issue may be transferred to non-Debtor entities, the automatic stay in favor of LBHI will continue to apply as a result of LBHI's liens and security interests in all of the Repo Assets including such SunCal Loans.") ***This revision laid bare the bad faith objective underlying the motion – staying the ES Action.***

In their haste to further enjoin the SunCal Appellants, the Lehman Entities ignored two obvious facts. First, the lien rights that Fenway was purportedly agreeing to transfer to LBHI are provided for in the MRA – *a contract that is being terminated upon closing. Appx. 1, at 9* ("LCPI all of the Repo Assets and the parties will terminate the MRA and the guaranty provided by LBHI with respect thereto."). Second, the "subrogation rights" that this non-existent lien was supposed to secure were based upon the Guarantee – *another contract that is being terminated upon closing. Id.* In an effort to "fix" these inconvenient and fatal defects, the Lehman Entities included a global "notwithstanding" clause in a revised order (now the executed "Compromise Order") that purports to convert this string of impossibilities into a legal reality. *Appx. 13, at 944 (line 6-13).*

**L.    The SunCal Appellants' Relief From Stay Motion.**  In the face of LCPI and LBHI's disclosed intent to buy the Disputed Loans and then attempt to offensively use their automatic stays to bar the ES Action, the SunCal Appellants filed an opposition to the Claims Transaction ("Opposition"), *Appx. 3*, and a related motion for relief from stay (the "RFS Motion"). *Appx. 10*. In the Opposition, the SunCal Appellants asked the lower court to bar the acquisition of the Disputed Loans, *to the extent necessary to prevent the Lehman Entities from using the transaction as means of interfering with the SunCal Appellants' Chapter 11 cases through the assertion of the automatic stay. Appx. 3*. The SunCal Appellants advised the lower court in this pleading that if transaction closed, and if it had the threatened injunctive effect, this relief would

-11-

violate the SunCal Appellants' automatic stay. *Appx. 16, at 1596.*[6] In the RFS Motion, the SunCal

Appellants sought (1) a ruling holding that any stay applicable on account of the Lehman Entities'

post-petition acquisition of the Sold Loans did not bar the ES Action, or (2) an order granting relief

from any stay that did arise on account of this transaction. *Appx. 10.* At the hearing on the

Compromise Motion and the RFS Motion, the lower court overruled the Opposition to the Claims

Transaction and denied the RFS Motion. *Appx. 24 and 25.*

  **M.**  **The SunCal Appellants' Appeal.** The SunCal Appellants filed notices of appeal

with respect to both the Compromise Order and the RFS Order on May 27, 2010. *Appx. 26 & 27.*

**VII.** **ARGUMENT**

  **A.**  **The Lower Court Lacked The Power To Invade The Exclusive Jurisdiction of**

**The California Bankruptcy Court**. The core issue before this Court is the inviolability of each

bankruptcy court's *in rem* jurisdiction over the property of the debtor *and the consequent power to*

*resolve claims against such property.* The Supreme Court and the Second Circuit have made it

crystal clear that no other court can interfere with, never mind usurp, this *in rem* power. The lower

court's order and the Claims Transaction must be set aside, because they ignore these clear and

binding precedents.

  The California Bankruptcy Court[7] is vested with exclusive jurisdiction over all property of

the SunCal Appellants' estates. 28 U.S.C. § 1334(e)(1). This exclusive jurisdiction includes the

power to resolve all claims and liens asserted against this property. *Hood,* 541 U.S. 440, 448 ("A

bankruptcy court's *in rem* jurisdiction permits it to 'determin[e] all claims that anyone, whether

named in the action or not, has to the property or thing in question. The proceeding is 'one against

the world.'"); *Gardner v. New Jersey,* 329 U.S. 565, 574 (1947) ("The whole process of proof,

allowance, and distribution is, shortly speaking, an adjudication of interests claimed in a *res*");

*Benton v. Callaway*, 165 F.2d 877, 880 (5th Cir. 1948).

---

[6] "This would also constitute a violation of the stay in the SunCal Debtors' cases, since it is designed to
enable Lehman to acquire and collect a debt against the SunCal Debtors." *Appx. 16 at 1596.*
[7] Exclusive jurisdiction is vested in U.S. District Court for the Central District of California. 28 U.S.C.
§ 1334(e)(1). The California Bankruptcy Court wields this jurisdiction through the reference order.

MAINDOCS-#148614-v1-SCC-Palmdale_SDNY_Appellants_Brief.DOC

The ES Action that was enjoined by the lower court's order seeks a judgment determining *the priority* of the Disputed Claims and the liens against estate property securing the same. *Appx. 11, 844-927.* This "hierarchical reordering of creditors claims," *Germain v. Connecticut Nat'l Bank*, 988 F.2d 1323, 1330 (2d Cir. 1993), falls squarely within the "claims allowance process" that is within the California Bankruptcy Court's exclusive jurisdiction. *See Sharp v. Hawkins*, 2004 WL 2792121 (N.D.Cal. 2004) ("Because the equitable subordination of Hawkins claims to those of other creditors (parenthetical omitted), the cause of action affects the hierarchical reordering of creditors' claims.")[8](citing and explaining *Germain*); *Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.,* 68 F.3d 26, 32 (2d Cir.1995) ("Unlike a proceeding that simply seeks to augment the estate, the present proceeding involves the priority rights of creditors who have filed claims against the estate.*"); In re CBI Holding Co., Inc.*, 529 F.3d 432, 466-67 (2d Cir. 2008); *In re Millennium Seacarriers, Inc.*, 419 F.3d 83, 91 (2d Cir. 2005); *see also* 28 U.S.C. § 157(b)(2)(k), (Deeming all "determinations of the validity, extent, or priority of liens" to be "core" proceedings.)

The Supreme Court has consistently defended the bankruptcy court's exclusive *in rem* power to resolve claims, holding that a claimant who submits to this power, by filing a claim, waives even fundamental constitutional protections. *Granfinanciera v. Nordberg*, 492 U.S 33, 58 (1989) (Filing of claims waives Seventh Amendment); *Hood*, 541 U.S. 440  (Filing of claim waives Eleventh Amendment); *Sampsell v. Imperial Paper & Color Corp.*,313 U.S. 215, 219 (1941) ("**The power of the bankruptcy court to subordinate claims or to adjudicate equities arising out of the relationship between the several creditors is complete.**") (emphasis added); *Pepper v. Litton,* 308 U.S. 295, 306-08, 60 S.Ct. 238, 245-46, 84 L.Ed. 281 (1939).

Second Circuit precedent is equally protective of this exclusive power. *In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 707 (2d Cir. 1995) ("Nothing is more directly at the core of

---

[8] This case provides an excellent discussion and application of the Second Circuit's ruling in *Germain*, and explains why under *Germain* equitable subordination actions fall squarely within the "claims allowance process."

bankruptcy administration ... than the quantification of all liabilities of the debtor,' the bankruptcy court's determination whether to allow or disallow a claim is a core function."); *Millennium*, 419 F.3d 83. For example, after the passage of FIRREA[9], the Resolution Trust Company ("RTC"), like the lower court, attempted to deny the bankruptcy court the right to disallow the claims filed by the RTC in that court, citing the exclusive jurisdictional language in FIRREA. This effort was rejected. *F.D.I.C. v. Wrapwell Corp.*, 922 F.Supp. 913, 918 (S.D.N.Y. 1996) ("I reject this argument because I am persuaded by the consistent rulings of courts that have addressed the matter that FIRREA's jurisdictional limitations apply only to *creditors* bringing claims against the FDIC, not to *debtors* being sued by the FDIC."); *In re All Season's Kitchen, Inc.*, 145 B.R. 391, 400 (Bankr.D.Vt.1992). In *All Season's*, the court cogently explained why the lower's court usurpation of the California Bankruptcy Court's exclusive power cannot stand: "**Without jurisdiction to allow or disallow claims by FDIC against debtors, the whole process will grind to a catastrophic halt in a procedural gridlock, leaving debtors and other creditors mired with no possibility for relief in hundreds of cases.**" *Id.*

The Second Circuit's ruling in *Millennium,* 419 F.3d 83 (2d Cir. 2005) (Sotomayor, J.) provides clear guidance on the conflict in this case. In *Millennium*, the parties holding liens on a ship owned by a Chapter 11 debtor contended that the bankruptcy court lacked jurisdiction to sell the ship "free and clear" of their maritime liens and to resolve the priority of their claims to the sales proceeds. According to the lienors, these matters had to be addressed in the Admiralty Court. The bankruptcy court rejected this contention, sold the ship, and resolved the priority of the liens asserted against the sale proceeds. On appeal, the Second Circuit held that the bankruptcy court's exercise of power was appropriate. 419 F.3d 83, citing the bankruptcy court's *in rem* jurisdiction over the asset:

> The bankruptcy court's *in rem* jurisdiction over a debtor's estate, in turn, permits a determination of all claims that "anyone, whether named in the action or not, has to the property or thing in question." Indeed, "[t]he proceeding is 'one against the world.' "

---

[9] Financial Institutions Reform, Recovery and Enforcement Act of 1989.

419 F.3d at 95-96; *see also, Chesley v. Union Carbide Corp.*, 927 F.2d 60, 66 (2d Cir. 1991) ("An additional consideration, furthermore, is presented in this case. "A common-law rule of long standing prohibits a court, whether state or federal, from assuming in rem jurisdiction over a res that is already under the in rem jurisdiction of another court."); *Kline v. Burke Const. Co.*, 260 U.S. 226, 23543 S.Ct. 79 (1922).

Here, as in *Millennium*, LCPI and the lower court, seek to bar the California Bankruptcy Court from resolving the priority of LCPI liens through the exercise of its *in rem* jurisdiction and power. This, they lack the power to do. *See also, U.S. v. Wood*, 290 F. 109, 110 (2d Cir. 1923) ("As the Supreme Court declared in *United States Fidelity Co. v. Bray*, 225 U.S. 205, 32 Sup.Ct. 620, 56 L.Ed. 1055, the jurisdiction of the bankruptcy courts in all proceedings in bankruptcy 'is intended to be exclusive of all other courts,' and such proceedings include, among others, 'the determination of the preferences **and priorities to be accorded to claims** presented for allowance of payment in regular course.'") (emphasis added).

*In re PRS Ins. Group, Inc.*, 2005 WL 3527032 (Bankr.D.Del. 2005) and *Eller Industries, Inc. v. Indian Motorcycle Manufacturing*, Inc., 929 F.Supp. 369 (D.Colo. 1995) an outside court, like the lower court, attempted to interfere with another court's *in rem* power to resolve claims filed in the latter court. In *PRS*, a state court receiver attempted to bar a Chapter 11 trustee from seeking to equitably subordinate the claim filed in the bankruptcy case by the receiver, citing the McCarran-Ferguson Act. The bankruptcy court rejected the Liquidator's contention, and concluded that "it had exclusive jurisdiction over the allowance of claims against the estate," 2005 WL 3527032 at 1. In *Eller*, 929 F.Supp. 369, a bankruptcy court in Massachusetts, like the lower court, issued an injunction barring a receiver appointed by the District Court in concurrently pending federal receivership, from using trademarks that the trustee in the bankruptcy case contended were property of his estate. The District Court rejected this injunction, holding that it held exclusive jurisdiction over property within the receivership estate that pending before it. *See also, In re Adelphia Communications Corp.*, 307 B.R. 404, 424 (Bankr.S.D.N.Y. 2004) ("the Court's core equitable jurisdiction to hierarchically prioritize their claims against other claims for

MAINDOCS-#148614-v1-SCC-Palmdale_SDNY_Appellants_Brief.DOC

the purpose of receiving a distribution from the estate, an essential and exclusive obligation of the Bankruptcy Court.").

The Lehman Entities' contention the California Bankruptcy Court's jurisdiction was usurped by the "happenstance" of the automatic stay conveniently steps over two steps in the causation chain. The first step is the "injunction-by-contract" that the Lehman Entities incorporated into the Claims Transaction. The second and more important step is the Compromise Order. *This ruling* "caused" the otherwise inapplicable automatic stay to operate as the Lehman Entities' injunction sword. In sum, the "automatic" stay in this case was anything but "automatic." Assets were dragged under the automatic stay through the combination of the collusive Claims Transaction and the Compromise Order.

The Lehman Entities' cart-before-the-horse argument also misses the relevant legal issue. The label and characterization assigned to the Compromise Order is irrelevant. *In re Dow Corning Corp.*, 255 B.R. 445, 472 (E.D.Mich.2000) ("A trial court judge's characterization of the rulings he/she enters is of no moment. It is the effect of these rulings which determines their appealability."); *U.S. Fidelity and Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1088 (6th Cir.1992) (holding that motion to realign the parties, which "would automatically either destroy or preserve diversity jurisdiction," was "in effect a dispositive ruling"). If the *effect* of the relief granted by the lower court is beyond its jurisdictional reach, it is void whether granted by happenstance or design.

**B.     The Lower Court Lacked The Power To Grant Injunctive Relief, Directly Or Indirectly.** A bankruptcy court's power to enjoin, whether under the guise of a "compromise" order, or otherwise, is limited to those circumstances where this relief is necessary to protect **what is *already* property of the estate**. *In re Johns-Manville Corp.*, 517 F.3d 52, 65 (2d Cir.2008) ( "*Manville II* "), *vacated & remanded on other grounds*, --- U.S. ----, 129 S.Ct. 2195, 174 L.Ed.2d 99 (2009), *aff'd in part & rev'd in part*, 600 F.3d 135 (2d Cir.2010) ("*Manville III* ").[10] At the time

---

[10] As the Second Circuit explained in *Manville III*, the *Manville II* ruling on the limits of a bankruptcy court's jurisdiction were not disputed or overturned by the Supreme Court in *Travelers Indemnity Co v.*

the Claims Transaction was approved, the Disputed Claims were *not* property of the estate. The stated purpose of this transaction was to *add* these assets to the estate due to their *future* value, through a *future* closing. Given this lack of ownership, the lower court could not have enjoined the ES Action directly when its issued the order based upon 11 U.S.C. § 105 and Fed.R.Civ.P. 65.

The legal issue presented by the instant case is whether a bankruptcy court can exceed the limits of the *Manville II* rule, and enjoin litigation pending between two third parties, which does not involve property of the estate, by having the non-debtor defendant convey an interest in the non-estate property to the debtor, thereby invoking the automatic stay? *Manville II* answered this in the negative, noting that this practice would make the bankruptcy court's jurisdiction limitless. 517 F.3d at 66 ("It was inappropriate for the bankruptcy court to enjoin claims brought against a third-party non-debtor solely ***on the basis of that third-party's financial contribution to a debtor's estate***. If that were possible a debtor could create subject matter jurisdiction over any non-debtor third-party by structuring a plan in such a way that it depended upon third-party contributions.") (emphasis added). A debtor cannot "create" jurisdiction through an opportunistic out-of-the-ordinary-course investment and a bankruptcy court cannot exceed the strict limits on its jurisdictional reach and injunctive power by allowing a debtor to shoehorn assets, which are currently in litigation, underneath the cloak of the automatic stay.

The case of *Matter of Zale Corp.*, 62 F.3d 746, 756-58 (5th Cir. 1995), which was cited extensively in *Manville II*, provides clear guidance on these facts. In *Zale*, as here, the debtor sought an injunction barring the pursuit of claims that were acquired through a post-petition compromise. The Fifth Circuit rejected this effort, correctly holding that the bankruptcy court cannot "create jurisdiction" by allowing a debtor to acquire claims and then enter into related compromises. The only material difference in this case is that the Lehman Entities are attempting

---

*Bailey*, 129 S.Ct. 2195 (2009). In *Bailey,* the Supreme Court set aside a part of the *Manville II* ruling on the grounds that the new litigation was barred by res judicata, and constituted an improper collateral attack on the 1986 confirmation order in the *Manville* case.

to avoid the need to seek relief under section 105 and Fed.R.Civ.P. 65, by dragging the newly acquired claims within the umbrella of their automatic stay.

At the core of the Compromise Motion is an effort to use the interface between 11 U.S.C. § 541(a)(7) and 11 U.S.C. § 362(a)(3) as a means of expanding the lower's court's jurisdictional reach and injunctive powers beyond existing limits. Section 541(a)(7) innocuously states that property acquired post-petition is "property of the estate." Section 362(a)(3) bars efforts to obtain control over "property of the estate." Section 541(a)(7) was incorporated into the bankruptcy code to allow a debtor, in the ordinary course, to acquire property, post-petition, and to have the automatic stay protect the same. *See Gallucci*, 931 F.2d 743-44. These sections work together to allow, for example, an operating business that acquires inventory, post-petition, to shield this inventory from prepetition claims. These sections were not designed to allow the professional liquidators in control of the vast cash resources of the now defunct (closed) Lehman Brothers, to opportunistically invest estate funds in claims owned by a third party, seeking a future profit, and then to thwart pending defenses to these claims by asserting the automatic stay. *Id.*

C.     **The Compromise Motion And The Compromise Order Violated The SunCal Appellants' Automatic Stay**. LCPI and LBHI have admitted in prior pleadings that they were acquiring the Disputed Claims from Fenway to make a future profit. *Appx. 30, at 2023, ¶ 21*. Since the Disputed Claims constitute *prepetition* claims against the SunCal Appellants, any party acquiring the same is subject to the automatic stay applicable in the SunCal Appellants Chapter 11 cases. 11 U.S.C. § 362(a). Section 11 U.S.C. § 362(a)(1) bars "the issuance or employment of a judicial administrative, or other action or proceeding against the debtor that was or could have been commenced" against the SunCal Appellants prepetition. Section 362(a)(3) bars any act "to exercise control over property of" the SunCal Appellants' estates. Finally, Section 362(a)(4) and (a)(6) bar any act to "enforce any lien against the property of the estate" or "any act to collect, assess or recover a claim against" the SunCal Appellants' prepetition.

A review of the Compromise Motion and the statements made by LCPI and LBHI in the pleadings filed in support thereof lead to only one conclusion: The Claims Transaction is clearly an

"act to recover" the Disputed Claims against the SunCal Appellants, and the Compromise Order is the "employment of … any action or proceeding against the debtor" that "could have been commenced" by the holders of the Disputed Claims prepetition. 11 U.S.C. § 362(a)(1); *see also In re Greene*, 50 B.R. 785, 787 (S.D.N.Y. 1985) ("The automatic stay proscribes the commencement or continuance of actions, including the issuance of process, to recover prepetition claims against debtors.); *National Tax Credit Partners, L.P. v. Havlik*, 20 F.3d 705, 707-708 (7th Cir. 1994) (Issuance of injunction by district court that interferes with property of the estate violates the automatic stay). These acts also violate 11 U.S.C. § 362(a)(3). These stay violations are void. *Eastern Refractories*, 157 F.3d 169, 172 (2d Cir.1998) (automatic stay is effective immediately upon filing of bankruptcy petition, and any subsequent proceedings against debtor or debtor entities are void); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 527 (2d Cir.1994).

In the ruling on the SunCal Appellants' Motion For Stay Pending Appeal, this Court stated that the stay violation "issue" had not been raised in the lower court and consequently was not preserved for appeal. The SunCal Appellants would respectfully disagree on four grounds. First, the issue was explicitly raised before the lower court *Appx. 16, at 1596, fn. 6.*[11] Second, the lower court was repeatedly apprised of two facts that necessarily raised the issue as a practical matter: The SunCal Appellants status as Chapter 11 debtor and the severe damage that would result to their reorganization effort if they were deprived of the ability to resolve the Disputed Claims by the Claims Transaction. *Appx. 3, at 72.*[12] This, without more, was sufficient to preserve the issue. *See Nicely v. McBrayer, McGinnis, Leslie & Kirkland,* 163 F.3d 376, 381 (6th Cir.1998) (Appellate courts have declined to consider arguments that were not properly raised before the trial court; however, it would be inappropriate not to consider argument where statute was clear on point at issue and where relevant information was clearly before the trial court so that it should not

---

[11] "This would also constitute a violation of the stay in the SunCal Debtors' cases, since it is designed to enable Lehman to acquire and collect a debt against the SunCal Debtors." Appx. 16 at 1596.
[12] "If LCPI is attempting to implement the above stratagem through the Transaction, and if this effort were to succeed, over $1.5 billion out of $2 billion in claims and liens at issue in the SunCal Debtors' proceedings could potentially be shielded from subordination. Obviously, this would seriously impair the SunCal Debtors' reorganization efforts and provoke another wholly unnecessary round of litigation."

have needed specific presentation of the argument in order to be aware of the proper result.). Third, counsel for the SunCal Appellants was effectively ordered to sit down when he attempted to ask the lower court a series of questions regarding the ruling. *Appx. 23 at 1853-54.*[13] But for this order, counsel would have requested a specific ruling on this issue. Fourth and finally, an order issued in violation of the automatic stay is void. *See Kalb v. Feuerstein,* 308 U.S. 433, 438, 60 S. Ct. 343, 84 L. Ed. 370 (1940); *In re 48th Street Steakhouse, Inc.,* 835 F.2d 427, 431 (2d Cir.1987); *In re Best Payphones, Inc.,* 279 B.R. 92, 97 & n. 8 (Bankr.S.D.N.Y.2002) (stating Second Circuit subscribes to majority view that stay violations are void; minority view holds violations are voidable). A void order can be challenged in any court at any time. *Old Wayne Mut. L. Assoc. v. McDonough,* 204 U.S. 8, 27 S.Ct. 236 (1907).

**D.  The Lower Court Did Not Use Or Correctly Apply The Operative Legal Standard**. A court can endorse a settlement only if "the compromise is fair, reasonable and adequate." *Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir.1982), *cert. denied,* 464 U.S. 818 (1983). When a collusive settlement and assignment, such as the Claims Transaction, damages the rights of third parties, whether by design or happenstance, the court cannot simply ignore this impact. *See IRAP Litigation,* 957 F.2d 1020, 1025 (2d Cir. 1992) ("[I]f third parties complain to a judge that a "decree will be inequitable because it will harm them unjustly, he cannot just brush their complaints aside."). The rights of third parties are a material factor in the approval process. *Id.* ("In other words, where the rights of one who is not a party to a settlement are at stake, the fairness of the settlement to the settling parties is not enough to earn the judicial stamp of approval."); *see also Donovan v. Robbins,* 752 F.2d 1170, 1176 (7th Cir.1985)  ("Even if no third party complains, the judge has to consider whether the decree he is being asked to sign is lawful and reasonable as every judicial act must be.").

The relevant language from the transcript that bears upon the approval methodology employed by the lower court quoted below:

---

[13] "And I'm not going to say more than that. And I think it's a good time for you to sit down."

MAINDOCS-#148614-v1-SCC-Palmdale_SDNY_Appellants_Brief.DOC

> Having heard the argument presented by the debtors, the support of the creditors' committee and the opposition by the SunCal voluntary debtors, which appears to the Court to be have been more in the nature of a reservation of rights as to the potential consequences in the SunCal bankruptcy case in California to the approval of the unwinding of the structure, I am satisfied that sufficient business justification has been presented to approve the motion and that the undoing of the structure results in a number of claimed benefits to the estate including the elimination of certain costs and the preservation of the rights of the separate debtors so that the distribution rights of those creditors looking to particular members of the Lehman corporation family will unaffected by approval of the settlement.

*Appx. 23, at 1824-35.* The above language is clear: The lower court *completely failed* to weigh the

impact of the closing of the Claims Transaction on the SunCal Appellants prior to granting relief.[14]

Id. If "nothing" is more directly at the core of bankruptcy administration" than the resolution of

claims in this circuit, *S.G. Phillips*, 45 F.3d at 707 (2d Cir. 1995), then the lower court's complete

failure to consider how denying the SunCal Appellants access to this core power would affect their

reorganization effort was reversible error. This is particularly true given the following facts in the

record: The SunCal Appellants were in the midst of using this core power to resolve disputes

relating to the priority of the Disputed Claims, *Appx. 11, at 929-935*; *Appx. 11, 844-927*; the

Disputed Claims comprise eighty percent, by amount, of the claims filed against the SunCal

Appellants' estates, *Appx. 3, at 72*; the litigation relating to the Disputed Claims stayed by the

lower court had been pending for over a year and was well advanced *Appx. 21 at 1642*; the SunCal

Appellants' reorganization plan was premised upon the resolution of the Disputed Claims *Appx. 11,

at 929-935*; and no meaningful payment can be made to the creditors of the SunCal Appellants'

estates until the Disputed Claims are resolved. *Appx. 21 at 1641.*

The correct *application* of the "fair and equitable" standard mandated the following judicial

inquiries: 1) why was it necessary to "park" all of the Disputed Claims in LCPI, when LCPI only

held title to two of these loans, *Appx. 17, at 1599, ¶ 3*, for a short period of time prepetition; 2)

what economic benefits were achieved through the use of LCPI as an ownership receptacle, other

than the stay of the ES Action; 3) whether the Disputed Claims could be transferred to a non-

---

[14] "I don't believe that there is anything in the motion before me that requires me to make any findings as to the consequences in the SunCal bankruptcy of my unwinding the structure. So part of what I don't understand is why you're spending all this time arguing about those consequences." *Appx. 23, at 1818.*

debtor, thereby eliminating the injunctive effect of the transaction; and 4) if staying the ES Action was not the objective of the Claims Transaction, why did LCPI refuse to stipulate to relief from stay to allow the ES Action to proceed; and 5) why relief from stay was not the better course since the resolution of the defenses to the claims, as the Second Circuit pointed out in *Bohack*, would provide needed closure for the Lehman Entities' creditor body. *Bohack*, 599 F.2d 1160, 1168.

None of these inquiries were made by the lower court. Had they been made, LCPI would have been forced to admit that the Disputed Claims were not parked in LCPI for economic reasons, *but to achieve a litigation advantage*. Given the hardship that this litigation scheme inflicted upon the SunCal Appellants, approval of this part of the transaction should have been denied or mitigated under the applicable legal standard.

     **E.**     <u>**The Compromise Order Approved A Transaction That Was Designed to Achieve A Bad Faith Objective**</u>. In analyzing the Claims Transaction, the lower court ignored the compelling and unrebutted evidence of bad faith presented by the SunCal Appellants. *Appx. 23, at 1818.* In particular, the lower court ignored the obvious relationship between LCPI past bad faith efforts to thwart the ES Action and the Claims Transaction. As more fully explained in the Couchot Declaration, *Appx. 21*, in 2008 and 2009, LCPI misrepresented its ownership of the SunCal I Loan and the Ritter Ranch Loan *in twenty-three separate pleadings* in an effort to use the automatic stay, which it knew had no application, to stay the ES Action. This course of conduct only stopped, after the California Bankruptcy Court ruled that LCPI was indeed misrepresenting the facts and that it did not hold any ownership interest in these loans. *Appx. 11, at 621-630.*. With the failure of its false stay gambit, LCPI had to come up with a new means of barring the California Bankruptcy Court from exercising its exclusive *in rem* power to rule on the validity, priority and extent of the Disputed Claims. It was this need that spawned *the structure* of the Claims Transaction.

Although the Lehman Entities represented at the hearing on the Compromise Motion that they had good business reasons for entering into the Claims Transaction, these "attorney representations" failed to overcome the tide of evidence to the contrary submitted by the SunCal

Appellants on the issue. These statements also failed to address the relevant legal issue – why the injunctive *structure* of the transaction was necessary. A review of the record establishes that the Lehman Entities provided two and only two primary reasons for the Claims Transaction: The purportedly difficult process of obtaining Fenway's consent to take actions on Fenway's behalf in the California Court and the costs of maintaining the existing transactional structure. *Appx. 1, at 6, ¶ 14.* Neither explanation addresses the core "bad faith" issue: Why it was necessary to "park" five of the seven Disputed Loans, indefinitely, in LCPI? Only one answer to this inquiry was consistent with facts: This structure was necessary to thwart the ES Action – a bad faith objective.

Although the Lehman Entities have suggested that somehow the SunCal Appellants "sat down" with respect to the issue of bad faith at the hearing, this could not be further from the truth. The SunCal Appellants had already met their burden on this issue when they arrived at the hearing. The pages of documentary and testimonial evidence they submitted chronically LCPI's past history of bad faith and pointing out the obvious relationship between this prior course of conduct and the structure of the Claims Transaction was unrebutted. It was the Lehman Entities who "sat down", by failing to present any probative evidence to the contrary.

The bad faith issue before this Court boils down to this: A transaction that is designed to afford one debtor the right to bar another debtor from objecting to and resolving the claims filed by the first debtor, while at the same time allowing the first debtor to insist upon payment of these claims through the a competing plan of reorganization, is the essence of bad faith. The law should not be used in a manner that converts the SunCal Appellants into the Lehman Entities' judicially restrained punching bag.

F.     **The Findings of Fact Are Contrary To The Evidence.** The form of the Compromise Order submitted to the lower court included a number of findings that were not only contrary to the record, but quite frankly impossibilities given the undisputed facts. The first finding states: "LCPI will have repurchased the Repo Assets *pursuant to the MRA*." (Emphasis added). This finding was designed to suggest to this Court that the underlying transaction was merely an ordinary course repurchase of estate assets, instead of an out of the ordinary course effort to

shoehorn non-estate assets within the umbrella of the automatic stay, to achieve a litigation advantage. This finding could not be further from the truth.

LCPI did not seek authority from the lower court to "assume" (via 11 U.S.C. § 365) or to otherwise perform its obligations "pursuant to the MRA" in the Compromise Motion. Instead, LCPI sought to "compromise" various contrived disputes with Fenway and related parties through *an entirely new transaction.* The Transaction Summary in the Compromise Motion makes this crystal clear, stating that the return of CP Notes and termination of the VFN Note "will constitute" full payment of the repurchase price under the MRA, "***notwithstanding anything to the contrary in the Fenway Documents or otherwise.***" *Appx. 1, at 10.* Performance pursuant to the MRA would have required LCPI to pay Fenway over $1 billion dollars in "immediately available funds." *Appx. 11, 794, ¶ 7.* Since the Disputed Claims only had a value of $400 million, LCPI's refusal to perform "pursuant to the MRA" is quite understandable.

The second erroneous finding made by the lower court states: "LBHI is fully subrogated to the claims of Fenway against LCPI to the full extent of any payment by LBHI in respect of such claims." *Appx. 24.* This finding was inserted in the Compromise Order to enable LBHI to argue that the non-existent lien it was purporting to impose upon the Disputed Claims through the Claims Transaction actually secured "something." In fact, the lien referenced in this finding secures nothing. The subrogation claim referenced in this finding is based upon the Guarantee issued in favor of Fenway. *Yet, the Compromise Motion explicitly states that this contract is being "terminated." Appx. 1,* Moreover, a subrogation relationship requires three parties. *See Hanover Ins. Co. v. U.S.,* 279 F.Supp. 851, 852 (S.D.N.Y. 1967) ("The surety relationship is tri-partite"); *Shannon R. Ginn Const. Co. v. Reliance Ins. Co.,* 51 F.Supp.2d 1347 (S.D.Fla. 1999) (Subrogation requires three parties: The primary obligor, the guarantor or surety, and the beneficiary of the guarantee.). Here only LCPI and LBHI are involved in this alleged suretyship relationship post-closing. This entire subrogation construct finding, like the "pursuant to the MRA" finding, is not only directly contrary to the record, but a legal impossibility.

MAINDOCS-#148614-v1-SCC-Palmdale_SDNY_Appellants_Brief.DOC

In the last contested finding the lower court states:

> LBHI shall succeed to any and all liens and security interests with respect to the Repo Assets and any interest therein asserted by Fenway under the Fenway Repo and/or the Fenway Documents (which liens and security interests shall remain in effect notwithstanding any subsequent transfer by LCPI of any of the Repo Assets or any interest therein), in the same priorities as held by Fenway Capital or Fenway Funding, to secure LBHI's subrogated claims, which liens and security interests shall hereby be deemed assigned transferred by Fenway Capital and Fenway Funding to LBHI.

*Appx. 24*. This finding ignores the record. The Compromise Motion specifically states that the MRA is being terminated. *Yet, this is the contract that includes the liens purportedly being assigned to LBHI by the lower court, per the above finding.* Moreover, as explained above, no subrogation claim survives for these non-existent liens to secure. Bankruptcy courts cannot create liens out of thin air to secure claims that do no exist. These findings are clearly erroneous and should be set aside.

## VIII.   CONCLUSION

The Compromise Order grants extraordinary relief that is outside the lower court's jurisdictional reach. This relief deprives another court of the exclusive jurisdiction vested in that court by Congress, it deprives that court of a power that the Second Circuit has stated is "at the core" of the administration of a bankruptcy case and it irreparably harms the SunCal Appellants without any justification. This order should be reversed as void to the extent that it directly, or indirectly, impairs the jurisdiction of the California Bankruptcy Court to grant, or the SunCal Appellants the ability to seek, any and all relief with respect to the Disputed Claims.

Respectfully submitted,

Dated: July 6, 2010 /s/  Sean A O'Keefe    /s/  Louis R. Miller
       Sean A O'Keefe      Louis R. Miller
       Paul J. Couchot      MILLER BARONDESS, LLP
       WINTHROP COUCHOT, P.C.  1999 Avenue of the Stars, Ste. 1000
       660 Newport Center Drive, 4th Floor LOS ANGELES, CA 90067
       Newport Beach, CA 92660   Telephone: (310) 552-4400
       Telephone: (949) 720-4100  Facsimile: (310) 552-8400
       Facsimile: (949) 720-4111

*Attorneys for the SunCal Appellants*

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 660 Newport Center Drive, 4th Fl., Newport Beach, CA 92660.

A true and correct copy of the foregoing document described as: **OPENING BRIEF RE APPEAL OF ORDER APPROVING DEBTORS' MOTION PURSUANT TO BANKR. RULE 9019 FOR AUTHORITY TO COMPROMISE CONTROVERSY IN WITH FENWAY CAPITAL, LLC AND A COMMERCIAL PAPER PROGRAM WITH FENWAY FUNDING, LLC** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On July 6, 2010, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- **Alfredo Rey Perez**
  alfredo.perez@weil.com,gayle.mitchel@weil.com,MCO.ECF@weil.com

☐ Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On July 6, 2010 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

Weil, Gotshal & Manges LLP
Alfredo Rey Perez, Esq.
700 Louisiana St., Suite 1600
Houston, Texas 77027

☐ Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.
☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| July 6, 2010 | Viann Corbin | *Viann Corbin* |
| *Date* | *Type Name* | *Signature* |