District Court Case No. 10-CV-4699

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

In re:  LEHMAN BROTHERS HOLDINGS INC., *et al.*,

Debtors.

_____

SunCal Communities I LLC, SunCal, Communities III LLC, SCC/Palmdale LLC, Acton Estates LLC, SunCal Beaumont Heights LLC, SunCal Emerald Meadows LLC, SunCal Johansson Ranch LLC, SunCal Bickford Ranch LLC, SunCal Summit Valley LLC, Seven Brothers LLC, Kirby Estates LLC, SJD Partners Ltd., SJD Development Corp., SCC Communities LLC, North Orange Del Rio Land LLC and Tesoro SF LLC,

Appellants,

vs.

Lehman Commercial Paper Inc., *and* Lehman Brothers Holdings Inc., *et al.*,

Appellees.

_____

**Appellees' Response To SunCal Appellants' Opening Brief Re Appeal of Order Approving Debtors' Motion Pursuant To Bankr. Rule 9019 For Authority To Compromise Controversy In Connection With A Repurchase Transaction With Fenway Capital, LLC And A Commercial Paper Program With Fenway Funding, LLC**

_____

On Appeal From the United States Bankruptcy Court for the Southern District of New York

Alfredo R. Pérez, Esq.
**WEIL, GOTSHAL & MANGES LLP**
700 Louisiana Street, Suite 1600
Houston, Texas 77027
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

Attorneys for Appellees
July 19, 2010

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ...................................................................iii-vi

I.     PRELIMINARY STATEMENT ...................................................................1

II.    STATEMENT OF APPELLATE JURISDICTION ......................................2

III.   STATEMENT OF ISSUES ........................................................................2

IV.    STANDARD OF REVIEW .........................................................................2

V.     SUMMARY OF ARGUMENTS ..................................................................3

VI.    STATEMENT OF FACTS ..........................................................................4

  A.   The Master Repurchase Agreement and the Commercial Paper
       Program..............................................................................................5

  B.   Debtors Move to Unwind the MRA and the Commercial Paper
       Program..............................................................................................6

  C.   The Bankruptcy Court Holds a Hearing on the 9010 Motion ...............7

  D.   The Bankruptcy Court's 9010 Order ....................................................9

VII.   ARGUMENT ..........................................................................................10

  A.   The Transaction Was in the Best Interests of the Debtors' Estates
       and Was Negotiated in Good Faith....................................................10

  B.   The SunCal Debtors Have Not Demonstrated That the Bankruptcy
       Court Abused its Discretion By Approving the Transaction ................14

       1.   The SunCal Debtors' Automatic Stay Arguments Are Not
            Properly Before This Court on This Appeal ..................................14

       2.   The SunCal Debtors Waived Their Argument that the 9019
            Order Violates Their Automatic Stay ...........................................19

       3.   The SunCal Debtors Waived The Argument that the 9019 Order
            Had to Consider the Impact of the Transaction on Their Estates .................23

C.    The Bankruptcy Court's Factual Findings Are Not Clearly
      Erroneous ............................................................................................................24

CONCLUSION.........................................................................................................................25

## TABLE OF AUTHORITIES

### CASES

**Page(s)**

*All Season's Kitchen, Inc. v. F.D.I.C. (In re All Season's Kitchen, Inc.),*
    145 B.R. 391 (Bank. D. Vermont 1992) ............................................................17

*Campbell v. Countrywide Home Loans, Inc.,*
    545 F.3d 348 (5th Cir. 2008) ..................................................................21, 22

*Capital One Auto Fin. v. Cowley,*
    374 B.R. 601 (W.D. Tex. 2006)................................................................15

*Carnegia v. Ga. Higher Educ. Assistance Corp.,*
    691 F.2d 482 (11th Cir. 1982) ................................................................22

*Carroll v. Tri-Growth Centre City, Ltd. (In re Carroll),*
    903 F.2d 1266 (9th Cir. 1990) ................................................................16

*Cosoff v. Rodman (In re W.T. Grant Co.),*
    699 F.2d 599 (2d Cir. 1983)....................................................................10

*Dale v. Chi. Tribune Co.,*
    797 F.2d 458 (7th Cir. 1986) ..................................................................19

*Eller Indus. Inc. v. Indian Motorcyle Mfg., Inc.,*
    929 F. Supp. 369 (D. Colo. 1995)............................................................17

*F.D.I.C. v. Wrapwell Corp.,*
    922 F. Supp. 913 (S.D.N.Y. 1996) ..........................................................17

*Feld v. Zale Corp. (In re Zale Corp.),*
    62 F.3d 746 (5th Cir. 1995) ................................................................18, 19

*Fellusis v. Calpine Corp. (In re Calpine Corp.),*
    354 Fed. App'x 479 (2d Cir. 2009)........................................................2, 25

*Fischer v. Pereira (In re 47-49 Charles St.),*
    209 B.R. 618 (S.D.N.Y. 1997)..................................................................2

*Hsu By and Through Hsu v. Roslyn Union Free School Dist. No. 3,*
    85 F.3d 839 (2d Cir. 1996)........................................................................2

*Hurst v. U.S. Bank (In re Hurst),*
    357 B.R. 782 (Bankr. W.D. Ark. 2006) ..................................................21

*In re 183 Lorraine St. Assocs.*,
    198 B.R. 16 (E.D.N.Y. 1996) ....................................................15

*In re Andrews*,
    2009 WL 1076831 (Bankr. S.D. Tex. 2009)....................................22

*In re Ashford Hotels, Ltd.*,
    226 B.R. 797 (Bankr. S.D.N.Y. 1998) ........................................10

*In re Boyer*,
    354 B.R. 14 (Bankr. D. Conn. 2006) ..........................................18

*In re Dow Corning Corp.*,
    255 B.R. 455 (E.D. Mich. 2000)................................................14

*In re GGSI Liquidation Inc.*,
    351 B.R. 529 (Bankr. N.D. Ill. 2006) ........................................22

*In re J. Menist Co.*,
    289 F. 229 (2d Cir. 1923)........................................................25

*In re LWD, Inc.*,
    342 B.R. 514 (Bankr. W.D. Ky. 2006) ......................................22

*In re Masterwear Corp.*,
    214 B.R. 511 (S.D.N.Y. 1999)..................................................19

*In re Purofied Down Prods. Corp.*,
    150 B.R. 519 (S.D.N.Y. 1993)..................................................10

*In re Spielfogel*,
    211 B.R. 133 (Bankr. E.D.N.Y. 1997)........................................10

*In re Vitreous Steel Prods. Co.*,
    911 F.2d 1223 (7th Cir. 1990) ..................................................22

*Jenkins v. Hodes (In re Hodes)*,
    287 B.R. 561 (D. Kan. 2002) ....................................................21

*Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*,
    517 F.3d 52 (2d Cir. 2008)........................................................18

*Kartchner v. Knauss (In re Knauss)*,
    1994 WL 87327 (9th Cir. May 14, 1994) ....................................21

*Lehman Commercial Paper, Inc. v. Palmdale Hills Prop. LLC*
*(In re Palmdale Hills Property, LLC),*
    423 B.R. 655 (B.A.P. 9th Cir. 2009)........................................................12, 16, 17

*Logan v. Credit Gen. Ins. Co. (In re PRS Ins. Group, Inc.),*
    2005 WL 3527032 (Bankr. D. Del. Dec. 19, 2005).........................................17

*Millennium Aviation Servs., Inc. v. Gen. Dynamics Co.,*
    335 Fed. App'x 76 (2d Cir. 2009)...................................................................23

*Nicely v. McBrayer, McGinnis, Leslie & Kirkland,*
    163 F.3d 376 (6th Cir. 1998) ..........................................................................20

*N. Acres Inc. v. Hillman State Bank (In re N. Acres Inc.),*
    52 B.R. 641 (Bankr. E.D. Mich. 1985) ...........................................................16

*Official Comm. of Unsecured Creditors of LTV Aerospace and Defense Co. v.*
*Official Comm. of Unsecured Creditors of LTV Steel Co. (In re Chateaugay Corp.),*
    988 F.2d 322 (2d Cir. 1993).............................................................................15

*Old Wayne Mut. Life Ass'n v. McDonough,*
    204 U.S. 8 (1907)..............................................................................................21

*Procter & Gamble Cellulose Co. v. Investbanka Beograd,*
    4 Fed. App'x 49 (2d Cir. 2001).................................................................. 14-15

*Purdy  v. Zeldes,*
    337 F.3d 253 (2d Cir. 2003).............................................................................12

*Stephanatos v. U.S.,*
    306 Fed. App'x 560 (Fed. Cir. 2009)..............................................................19

*Universal Oil, Ltd. v. Allfirst Bank (In re Millenium Seacarriers, Inc.),*
    419 F.3d 83 (2d Cir. 2001)...............................................................................17

*U.S. Fidelity & Guar. Co. v. Thomas Solvent Co.,*
    955 F.2d 1085 (6th Cir. 1992) .........................................................................14

*U.S. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO,*
    905 F.2d 610 (2d Cir. 1990).............................................................................12

*Vaughn  v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham*
*Lambert Group, Inc.),*
    134 B.R. 499 (Bankr. S.D.N.Y. 1991).........................................................2, 10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
    396 F.3d 96 (2d Cir. 2005)......................................................................................19

*Whitman Corp. v. Home Holdings, Inc. (In re Home Holdings, Inc.),*
    2001 WL 262750 (S.D.N.Y. Mar. 16 2001) ...................................................15

## RULES

Fed. R. Civ. P. 52...........................................................................................................2

Fed. R. Bank. P. 9019 ...................................................................................................18

Fed. R. Bank. P. 9019(a)...............................................................................................10

## STATUTES

11 U.S.C. § 362(a)(1)....................................................................................................21

11 U.S.C. § 362(a)(3)..........................................................................................16, 18, 21

11 U.S.C. § 541(a)(7)..............................................................................................16, 18

28 U.S.C. § 157...............................................................................................................2

28 U.S.C. § 157(G) ........................................................................................................19

28 U.S.C. § 158(a)(1)......................................................................................................2

28 U.S.C. § 1334..............................................................................................................2

Appellees Lehman Brothers Holding, Inc. ("LBHI") and Lehman Commercial Paper Inc. ("LCPI") (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman") respectfully submit their brief in opposition to the opening brief on appeal of Appellants (the "SunCal Debtors") from the ruling by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") that permitted the Debtors to consummate a transaction that, among other things, allowed (i) LCPI to have certain assets re-transferred to it pursuant to preexisting contractual rights and (ii) LBHI to have its preexisting security interests in those assets preserved.

## I. PRELIMINARY STATEMENT

The central questions on this appeal are simple:  was the Transaction (defined below) in the best interests of the Debtors' estate and did it fall within the lowest range of reasonableness. The answer to both questions is also simple:  yes.  At the hearing on whether to approve the Transaction, the Debtors provided unrefuted testimony establishing the numerous sound business reasons for the Transaction, and they also provided unrefuted testimony that the Transaction resulted from protracted arm's-length negotiations.  The SunCal Debtors chose not to cross-examine the Debtors' witness.  In fact, they did not call any of their own witnesses to establish bad faith, the **only** basis on which they originally opposed the Transaction.

Having failed to establish a record that supports their positions, the SunCal Debtors devote the vast majority of their brief to raising new arguments for the first time on appeal. These new arguments center around the idea that the Bankruptcy Court impermissibly imposed an injunction—the automatic stay—on the SunCal Adversary Proceeding (defined below).  They also argue that the Transaction violates their automatic stay.  This gambit fails both procedurally and substantively.  The new arguments address issues that simply do not appear in the 9019

Order (defined below).  Because the 9019 Order neither expressly nor implicitly addressed the

Debtors' automatic stay, most of these issues are not properly before the Court on this appeal.

Moreover, the SunCal Debtors waived many of these arguments because they did not raise them

below.  Substantively, these arguments ignore, among many other things, the fact that the

automatic stay applies by operation of the Bankruptcy Code and is not an injunction issued by a

court.  As discussed more specifically below, these are just some of the many reasons why the

SunCal Debtors' new arguments are as flawed as they are belated.

## II.  STATEMENT OF APPELLATE JURISDICTION

The Bankruptcy Court had jurisdiction over the 9019 Motion, defined below, under 28

U.S.C. §§ 157 and 1334.  This Court has jurisdiction under 28 U.S.C. § 158 (a)(1).

## III.  STATEMENT OF ISSUES

1.  Did the Bankruptcy Court abuse its discretion when it approved the Transaction?

2.  Were Bankruptcy Court's findings that (i) "LCPI repurchased the Repo Assets pursuant

   to the MRA," (ii) LBHI is fully subrogated to Fenway's claims against LCPI and (iii)

   LBHI shall succeed to any and all of Fenway's liens and security interests in the Repo

   Assets, clearly erroneous?

## IV.  STANDARD OF REVIEW

The Bankruptcy Court's approval of the Transaction must not be overturned "unless it is

manifestly erroneous and a clear abuse of discretion."  *Fischer v. Pereira (In re 47-49 Charles

St.)*, 209 B.R. 618, 620 (S.D.N.Y. 1997).[1]   The Bankruptcy Court's factual findings are

---

[1] The SunCal Debtors do not have any support for their contention that, because the Bankruptcy Court did not make a good-faith finding, this Court may review *de novo* whether the Transaction should have been approved.  (Opening Br. at 2).  This is not surprising since the Bankruptcy Court was not required to make such a finding.  *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991)

reviewed for clear error.  *Felluss v. Calpine Corp. (In re Calpine Corp.)*, 354 Fed. App'x 479,

480 (2d Cir. 2009).

## V.  SUMMARY OF ARGUMENTS

The Bankruptcy Court did not abuse its discretion in approving the Transaction because

the ***only*** evidence in the record shows that the Transaction was in the best interests of the

Debtors estates and fell well within the lowest range of reasonableness.  The testimonial

evidence proves that the Transaction would, among other things, eliminate the time delay

associated with maintaining certain repurchase and the commercial paper programs.  By contrast,

the SunCal Debtors elicited no evidence demonstrating bad faith, the only basis on which they

opposed the Transaction.  Instead, they relied on legal arguments that have already been rejected

twice by the California bankruptcy courts.  Moreover, because the Transaction either enables the

Debtors to perform or preserves certain prepetition contract rights, the SunCal Debtors cannot

possibly demonstrate bad faith.  Further, the SunCal Debtors knew for more than a year that the

Debtors, along with certain other third parties, were attempting to unwind the repurchase and

commercial paper programs.

Nor should the Court overturn the Transaction based on the numerous arguments that the

SunCal Debtors raise for the first time on appeal.  They contend that the Bankruptcy Court

lacked the authority and the jurisdiction to issue an injunction—the automatic stay—that stayed

the SunCal Adversary Proceeding.  These issues are not properly before the Court on this appeal

---

("When assessing a compromise and settlement, we are not obliged to determine and rule upon
disputed facts and questions of law, but rather only to 'canvass' the issues.").  In *Hsu By and
Through Hsu v. Roslyn Union Free School District No. 3*, the only case that Debtors use to
support the *de novo* standard, the court held that it would examine the record and determine
whether injunctive relief was warranted where the district court did not make findings of fact as
required by Federal Rule of Civil Procedure 52.  85 F.3d 839, 848 n.1 (2d Cir. 1996).  This
holding plainly does not support *de novo* review of whether the Transaction should have been
approved.

because the 9019 Order (defined below) simply does not address the automatic stay.  Moreover,

these arguments are flawed as a matter of fact and law.  To take but one example, although the

9019 Order does not decide whether the Debtors' automatic stay applied to the SunCal

Adversary Proceeding, the Bankruptcy Court would have had the authority and jurisdiction to do

so.  It is black-letter bankruptcy law that the debtor's home bankruptcy court has the authority

and jurisdiction to determine the scope and applicability on of the debtor's automatic stay.

 The SunCal Debtors have waived their arguments that the Transaction violated their

automatic stay and the Bankruptcy Court should have considered the impact of the Transaction

on their estates.  The SunCal Debtors did not raise this alleged stay-violation below and they

cannot now raise it for the first time on appeal.  Moreover, they agreed at the hearing on the

Transaction that the Bankruptcy Court should not consider the Transaction's consequences on

their estates but should address that at the separate hearing on the SunCal Debtors' motion

seeking relief from stay, not the 9019 Order.

 Finally, the Bankruptcy Court's factual findings were not clearly erroneous and once

these transactions are understood, it becomes clear that they are fully supported by the record.

The SunCal Debtors' arguments to the contrary demonstrate a fundamental misunderstanding of

the Transaction, the MRA, and the repurchase and commercial paper programs.

## VI.  STATEMENT OF FACTS

 Prior to the Debtors' bankruptcy filings, LCPI and three non-debtor Lehman affiliates,

Lehman ALI, Inc., OVC Holdings LLC, and Northlake Holdings LLC (collectively, the

"Lehman Lenders"), provided over $1.5 billion in senior secured financing (the "SunCal Loans")

to certain indirect subsidiaries of SCC Acquisitions, Inc., (the "SunCal Companies") pursuant to

seven "Loan Agreements."  Five Loan Agreements each memorialize a term loan and a revolver

loan, whereas the remaining two Loan Agreements only memorialize term loans.  (Appx. 7, 159-71).[2]   The SunCal Companies used the loan proceeds to develop certain real estate projects located in California.

     The SunCal Companies defaulted on the loans and, subsequently, certain of the SunCal Companies became involuntary debtors ( the "Trustee Debtors") or voluntary debtors (the "Voluntary Debtors") in chapter 11 cases currently pending in the United States Bankruptcy Court for the Central District of California (the "California Bankruptcy Court").

**A.**     **The Master Repurchase Agreement and the Commercial Paper Program**

     On August 22, 2008, LCPI and Fenway Capital, LLC ("Fenway Capital") entered into a master repurchase agreement ("MRA"), pursuant to which LCPI subsequently transferred to Fenway Capital, among other assets, those SunCal Loans that were term loans (the "MRA Loans"), subject to those loans being transferred back to LCPI in the future.  (Appx. 11, 790) (applicability provision).  The specific loans that were transferred pursuant to the MRA are identified in written confirmations ("Repo Confirmations") that the MRA required the parties to utilize.  *See* MRA § 3(b) (Appx. 11, 792).  On September 12, 2008, LCPI provided Fenway Capital with the Repo Confirmations for the MRA Loans.  (Appx. 7, 179-85).  According to the Repo Confirmations, Fenway Capital received, among other loans, seven SunCal **term** loans. (*Id.*).  Not reflected in the Repo Confirmations, and therefore not transferred to Fenway Capital, were the **revolver** loans, such as the Ritter Ranch Revolver Loan.  (*See id.*).

     These MRA transfers were part of a larger series of transactions.  Using the MRA Loans and the other loans transferred to it by LCPI pursuant to the MRA (collectively, the "Repo Assets"), Fenway Capital issued a variable funding note (the Series 2008-2 Note) (the "VFN

---

[2] "Appx." refers to the Appendix in Support of SunCal Appellants' Opening Briefs [D.E. 10], followed by the appropriate tab and page number.

Note") to Fenway Funding, LLC ("Fenway Funding" and together with Fenway Capital,

"Fenway").  In turn, Fenway Funding issued commercial paper notes ("CP Notes") to LBHI

backed by the VFN Note as collateral.  LBHI subsequently pledged its interest in the CP Notes to

JPMorgan Chase ("JPMorgan").  Because LBHI pledged the CP Notes to JPMorgan, LBHI held

the ultimate economic interest in the Repo Assets.  In addition, LBHI executed a guaranty

("Guaranty") of LCPI's obligations under the MRA.

Because LBHI owned the CP Notes and LCPI was obligated to repurchase the Repo

Assets, the Fenway Repo was effectively between Lehman entities, with Fenway Funding and

Fenway Capital serving as mere conduits with no economic interest in any outcome.  (Appx. 7,

511).  Nevertheless, because of the MRA and the commercial paper program, Lehman had to

seek consent from Fenway, among others, before taking actions concerning the Repo Assets.

**B.      Debtors Move to Unwind the MRA and the Commercial Paper Program**

Pursuant to Bankruptcy Rule 9019, on March 25, 2010, the Debtors moved the

Bankruptcy Court (the "Original 9019 Motion") to allow them to enter into a compromise (the

"Transaction") whereby LCPI would have the Repo Assets (including the SunCal Loans)

retransferred to it pursuant to the MRA, and LBHI, as the holder of the CP Notes and the

guarantor of LCPI's obligations under the MRA, would surrender the CP Notes for cancellation

as payment of the repurchase price under the MRA and in satisfaction of LBHI's obligations

under the Guaranty.  (Appx. 1, 9-11).  As a result, LBHI would become subrogated to the claims

and other rights of Fenway under the Fenway Documents, including Fenway's security interest

in the Repo Assets.[3]  The Transaction would also result in the termination of the MRA, the commercial paper program, and the Fenway Documents.  (*Id.*).[4]

The Transaction was designed to (i) eliminate the expense and time delay associated with maintaining the MRA and commercial paper programs, (ii) allow LCPI to end the litigation regarding the MRA in the SunCal bankruptcy cases, and (iii) enable Fenway Capital, which had no economic interest in the Repo Assets, to seek dismissal of the claims against it in the SunCal Adversary Proceeding and avoid the expense of additional litigation regarding the MRA.  (*See generally* Appx. 1).  The SunCal Debtors objected to the Transaction **solely** on the basis that it was animated by a bad faith motive.  (*See generally* Appx. 3).  They argued the Transaction was designed to apply the Debtors' automatic stay to the SunCal Adversary Proceeding.  (*Id.*).

### C.    The Bankruptcy Court Holds a Hearing on the 9010 Motion

On May 12, 2010, the Bankruptcy Court held a hearing ("9019 Hearing") on the 9019 Motion.  The Debtors entered evidence into the record that the Transaction was in the best interests of their respective estates:  they proffered the testimony of Mr. Jeffrey Fitts, a managing director of Alvarez & Marsal, who testified that the Transaction would (i) eliminate the time and delay associated with maintaining the MRA and the commercial paper program; (ii) eliminate the administrative fees to Deutsche Bank, Hudson Castle and other third parties in connection with maintaining the MRA and the commercial paper program; and (iii) enable LBHI to access certain funds valued at a little over one million dollars that were otherwise off-limits.  (Appx. 23, 1801-02).  In addition, he testified that the Transaction was designed to put LCPI in the position

---

[3] The Debtors filed a supplemental motion pursuant to Bankruptcy Rule 9019 (the "Supplemental 9019 Motion," together with the Original 9019 Motion, the "9019 Motion") on May 7, 2010.

[4] Capitalized terms not defined herein shall have the meaning given to them in the Original 9019 Motion. (Appx. 1, 5).

that it occupied before the MRA and to maintain LBHI's preexisting interests in the CP Notes. (*Id.*).  Finally, he testified that the Transaction was a reasonable exercise of the Debtors' business judgment, was fair and reasonable under the circumstances, and was the product of protracted arm's-length negotiation.  (*Id.*).[5]

Despite repeated invitations from the Bankruptcy Court to cross-examine Mr. Fitts (Appx. 23, 25-29), the SunCal Debtors did not challenge his testimony.  (*Id.*).  Nor did they call any of their own witnesses.  In fact, the SunCal Debtors conceded that they lacked standing to challenge whether the Transaction was in the best interests of the Debtors' estates.  (*Id.*, 1806) ("We're not a claimant in this case.  So we haven't asserted standing to get into the issue of the merits.").  The Bankruptcy Court therefore accepted Mr. Fitt's unrebutted testimony into evidence.  (*Id.*, 1807) ("I accept the proffer with such conclusions to be drawn from the proffer as will be determined following argument.").[6]

Indeed, the SunCal Debtors did not proffer ***any*** evidence that ***the Transaction*** was negotiated in bad faith:

> THE COURT:  What I said was that if you have a concern about the proffer and wish to examine the witness in order to make a record that you view to be either more consistent with your understanding of the facts or more helpful to you in the argument you wish to make when we get into the legal argument phase of this, you're free to call the witness. . . .

---

[5] The SunCal Debtors contend that the Transaction was "collusive." Opening Br. at 16, 20.  But they did not offer any evidence to rebut Mr. Fitts's testimony that the Transaction was the product of protracted arm's length negotiation.

[6] At the 9019 Hearing, the Debtors' creditor's committee supported the Debtors' position that the Transaction was a proper exercise of the Debtors' business judgment.  The committee argued that (i) having Fenway in the middle of the MRA and commercial paper program made other transactions more "complicated and time consuming" and (ii) removing Fenway would clear-up ownership of the MRA Loans, which had significant purposes separate and apart the SunCal Adversary Proceeding.  (Appx. 23, 1820).

MR. O'KEEFE:  Very well, Your Honor.  We will reserve the right for the
following motion.

(Appx. 23, 1807).  The SunCal Debtors chose simply to make legal arguments based on the

unrebutted facts that the Debtors entered into evidence.

### D.        The Bankruptcy Court's 9019 Order

After the close of argument on the 9019 Motion, the Bankruptcy Court ruled that it was

"satisfied that sufficient business justification [had] been presented to approve the [9019 Motion]

and that the undoing of the structure results in a number of claimed benefits to the estate."

(Appx. 23, 1824-25).  On May 13, 2010, the Bankruptcy Court entered an order (the "9019

Order") approving the Transaction.  (*See generally* Appx. 24).  Among other things, the

Bankruptcy Court found that "upon closing of the Transaction, LCPI will have repurchased the

Repo Assets pursuant to the MRA."  (Appx. 24,  1892).  The 9019 Order also found that (i)

"LBHI is fully subrogated to the claims of Fenway against LCPI to the full extent of any

payment by LBHI in respect of such claims," (ii) "LBHI shall succeed to any and all liens and

security interests with respect to the Repo Assets and any interest therein asserted by Fenway

under the Fenway Repo and/or the Fenway Documents," and (iii) "to secure LBHI's subrogated

claims, which liens and security interests shall [] be deemed assigned and transferred by Fenway

Capital and Fenway Funding to LBHI."  (*Id.*).

The 9019 Order did not make ***any*** findings of fact or legal conclusions regarding

whether, upon consummation of the Transaction, the Debtors' automatic stay would apply to the

SunCal Adversary Proceeding.  (*See* Appx. 24).  Nor did it make ***any*** findings of fact or legal

conclusions regarding whether, if the Debtors' automatic stay did apply, relief from stay should

be granted.  (*Id.*).  The 9019 Order made no findings whatsoever concerning any possible

consequences that the Transaction may have on the SunCal Adversary Proceedings.

9

In fact, at the 9019 Hearing, the Bankruptcy Court make clear that it would not make

such findings or conclusions in the 9019 Order and the SunCal Debtors *did not object*:

> THE COURT:  That's not before me right now. . . .  I don't believe that there is
> anything in the motion before me that requires me to make any findings as to the
> consequences in the SunCal bankruptcy of my unwinding the structure.  So part of
> what I don't understanding is why you're spending all this time arguing about
> those consequences.
>
> MR. O'KEEFE:  Your Honor, with that characterization, I'm more than willing to
> sit down.  I just wanted to make sure, Your Honor, that in connection with the
> next motion [i.e., the motion concerning the automatic stay], I didn't prejudice
> any rights in this motion.  Otherwise, I wouldn't have said anything.  But I
> appreciate Your Honor's clarification in that regard.

(Appx. 23, 1818-19).  The SunCal Debtors understood and agreed that the consequences of the

Transaction would only be addressed at the later hearing ("Stay Relief Hearing") on their motion

seeking relief from the Debtors' stay ("Stay Relief Motion"), and not in the 9019 Order.

## VII.  ARGUMENT

### A.    The Transaction Was in the Best Interests of the Debtors' Estates and Was Negotiated in Good Faith

The SunCal Debtors completely ignore the central questions on appeal:  was the

Transaction fair and equitable and did it fall above the lowest point in the range of

reasonableness.  Bankruptcy Rule 9019 provides, in part, that "[o]n motion by the [debtor in

possession] and after notice and a hearing, the court may approve a compromise or settlement."

Fed. R. Bankr. P. 9019(a).  This rule empowers bankruptcy courts to approve settlements "if they

are in the best interests of the estate."  *Drexel Burnham*, 134 B.R. at 505.  The settlement need

not result in the best possible outcome for the debtor, but must not "fall below the lowest point in

the range of reasonableness."  *Id.*[7]  The court may also give weight to the informed judgment of

---

[7] *See also Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).

the debtor that a compromise is fair and equitable. *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *In re Ashford Hotels, Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998).

The SunCal Debtors do not address this standard because they recognize that the unrefuted evidence establishes that the Transaction is fair, equitable, in the best interests of the Debtors' estates, and falls well within the range of reasonableness. *See supra* at VI(C). They contend that the Debtors only make "legal arguments" concerning the business reasons for the Transaction. (Opening Br. at 22). But this argument overlooks the fact that the Bankruptcy Court accepted into evidence Mr. Fitts's testimony concerning the numerous business reasons for the Transaction. *Supra* at VI(C). Mr. Fitts testified at the 9019 Hearing that the Transaction would, among other things, eliminate the costs and time delays associated with maintaining the MRA and the commercial paper program. *Supra* at VI(C). This testimony is unrefuted. In fact, the SunCal Debtors admitted at the 9019 Hearing that they did not have standing to challenge the merits of the Transaction. *See supra* at VI(C).

There being no substantive basis to challenge the Transaction, the SunCal Debtors argue that the Transaction was negotiated in bad faith. But Mr. Fitts's unrebutted testimony establishes that the Transaction resulted from protracted arm's-length negotiation. *See supra* at VI(C). Moreover, the Court has already held that the SunCal Debtors "presented no evidence that the settlement was not 'negotiated in good faith' and is not in the 'best interests of the estate.'" (Docket No. 8 at 4). Nevertheless, the SunCal Debtors argue that the Couchot Declaration provided evidence of bad faith. (Opening Br. at 22). But the Couchot Declaration only argues that in 2008 and 2009 LCPI allegedly misrepresented its ownership of certain SunCal Loans and falsely invoked its automatic stay based on that alleged misrepresentation. (*See* Opening Br. at

22-23; Appx. 21).  This allegation about *past* actions in no way demonstrates that *this Transaction* was negotiated in bad faith.[8]

Moreover, the California courts have already determined that LCPI did not inappropriately invoke its automatic stay.  In *Lehman Commercial Paper, Inc. v Palmdale Hills Property, LLC (In re Palmdale Hills Property, LLC)*, 423 B.R. 655 (B.A.P. 9th Cir. 2009) (the "BAP Decision"), the court held "[b]ecause, in this case, equitable subordination would modify the creditor's property interest, we find it violates [LCPI's] automatic stay."  423 B.R. at 659. The SunCal Debtors contend that this ruling had "minimal impact" because the California Bankruptcy Court had previously found that LCPI sold all of its interests in all of the SunCal Loans to Fenway Capital.  (Opening Br. at 9).  But the SunCal Debtors have twice made this argument to the California courts and it has been rejected both times.  The BAP Decision made clear that, despite the MRA, LCPI had "an interest in at least one of the loans to [the SunCal] Debtors" that was sufficient to invoke its automatic stay.  423 B.R. at 662.[9]  The SunCal Debtors made this same argument to the California Bankruptcy Court at a February 2010 hearing.  They attempted to downplay the BAP Decision by arguing that "the current ruling that stands is that there is no economic interest that LCPI owns that would precipitate a stay."  (Appx. 7, 374-75). But the California Bankruptcy Court—the *very same court* the SunCal Debtors contend held that LCPI sold all of its interests in the SunCal Loans—disagreed.  The California Bankruptcy Court

---

[8] Putting aside the merits of this argument, it obviously does not apply to LBHI.  Thus, the SunCal Debtors have not offered *any* evidence whatsoever suggesting bad faith by LBHI.

[9] The SunCal Debtors have appealed this factual finding, but they are nevertheless collaterally estopped from relitigating it.  *See Purdy v. Zeldes*, 337 F.3d 253, 258 (2d Cir. 2003) (collateral estoppel prevents relitigation of issues decided in a prior litigation); *United States v. Int'l Bhd. of Teamsters*, 905 F.2d 610, 621 (2d Cir. 1990) (judgments on appeal have preclusive effect).  In any event, this finding is supported by the record, which establishes the Ritter Ranch Revolver Loan was never transferred to Fenway Capital.  *Supra* at VI(C).

stated that it "always understood that there were sold and there were unsold loans," (Appx. 7, 377), and at a continuation of the February 2010 hearing, it dismissed LCPI from the SunCal Adversary Proceeding because "the maintenance of a claim for equitable subordination . . . against LCPI would be in violation of the stay." (Appx. 7, 388). The SunCal Debtors' bad-faith arguments have no support in the record.

Finally, the SunCal Debtors have always known that, under the MRA, LCPI was required to repurchase the Repo Assets, including the SunCal Loans. Similarly, well before the Transaction, the Debtors informed the SunCal Debtors that their actions implicated LBHI's automatic stay because the CP Notes, which are held by LBHI, are ultimately secured by the Repo Assets, including the SunCal Loans. (*See* Appx. 7, 130-149). In fact, the SunCal Debtors have known that Lehman and Fenway were contemplating the repurchase of the Repo Assets for nearly one year: in May 2009, Fenway's counsel informed the SunCal Debtors that "Fenway has been working hard (and still negotiating) to extricate itself from the middle of the transaction since September of 2008," before the LBHI bankruptcy, and that it [and] "has no skin in the game." (Appx. 7, 511). And at a February 2010 hearing, Fenway announced to the SunCal Debtors and the SunCal Court that Lehman and Fenway intended to enter into the Transaction. (*Id.*, 320). Through the Transaction, the parties are performing their obligations under the MRA and restoring the property rights of LCPI and LBHI as originally contemplated by the MRA and the other Fenway Documents.

**B.     The SunCal Debtors Have Not Demonstrated That the Bankruptcy Court Abused Its Discretion By Approving the Transaction**

> **1.     The SunCal Debtors' Automatic Stay Arguments Are Not Properly Before This Court on This Appeal**

The SunCal Debtors contend that the "core issue before this Court is the inviolability of each bankruptcy court's *in rem* jurisdiction over the property of the debtor *and the consequent power to resolve claims against such property*."  (Opening Br. at 12(emphasis in original)).  Needless to say, this "core issue" bears no resemblance to any of the issues actually litigated and decided at the 9019 Hearing and in the 9019 Order.  *See supra* at VI(C), (D).  The SunCal Debtors argue that the 9019 Order imposed an injunction—the automatic stay—that exceeded the Bankruptcy Court's authority and jurisdiction.  (Opening Br. at 12-18).  Recognizing that the 9019 Order does not expressly concern the automatic stay, the SunCal Debtors argue that it in effect enjoins the California Bankruptcy Court.  (Opening Br. at 16) (citing *In re Dow Corning Corp.*, 255 B.R. 455 (E.D. Mich. 2000); *U.S. Fidelity & Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085 (6th Cir. 1992)).  But in its simplest formulation, all that the 9019 Order does is allow for (i) LCPI to have certain assets retransferred to it pursuant to preexisting contractual rights and (ii) LBHI to have its preexisting security interests in those assets preserved.[10]  Because the 9019 Order neither expressly nor effectively addresses the automatic stay, the SunCal Debtors' arguments concerning the Bankruptcy Court's authority and jurisdiction to issue certain rulings on the Debtors' automatic stay are not properly before the Court on *this* appeal. *Procter &*

---

[10] This is not a situation in which the 9019 Order expressly stated that the automatic stay did not apply when, in fact, it addressed this issue.  *See Dow Corning*, 255 B.R. at 471 (order stated it "did not amend, modify or otherwise change" a previous order confirming a plan when in fact it changed the previous order's release and injunction provisions).  And unlike *U.S. Fidelity* in which the "issues of realignment and diversity jurisdiction were not severable," 955 F.2d at 1088, whether the Transaction should have been approved and whether the automatic stay applied to the retransferred assets are distinct issues.  (*See* Docket No. 8 at 4).

*Gamble Cellulose Co. v. Investbanka Beograd*, 4 Fed. App'x 49, 51 (2d Cir. 2001) ("UCP Article 19" challenge not properly before the court on appeal because the judgment below did not address that issue); *Capital One Auto Fin. v. Cowley*, 374 B.R. 601, 610 (W.D. Tex. 2006) ("[b]ecause the Bankruptcy Court did not issue a ruling as to the scope of the automatic stay" the court declined to address that issue on appeal).[11]

In any event, the SunCal Debtors' contention that the 9019 Order usurps the California Bankruptcy Court's exclusive jurisdiction also fails on the merits. Contrary to what the SunCal Debtors contend, the Bankruptcy Court did not "cause" the automatic stay to apply to the retransferred assets. (Opening Br. at 16). The Bankruptcy Court expressly deferred ruling on whether the Debtors' automatic stay applied to the SunCal Adversary Proceeding to avoid any conflict with an appeal on the same issue pending before the United States Court of Appeals for the Ninth Circuit. (Appx. 23, 1851-52).[12] Indeed, the Bankruptcy Court declined to make particularized findings with respect to the Debtors' automatic stay. (*Id.*, 1853-54). Instead, the automatic stay applies to the SunCal Adversary Proceeding because of rulings from the California bankruptcy courts, not the Bankruptcy Court. (*See supra* at VII(A)). Moreover, the

---

[11] The SunCal Debtors' appeal of the 9019 Order is also moot and should be dismissed. The Transaction has been consummated and cannot be unwound due to substantial third-party reliance. *Official Comm. of Unsecured Creditors of LTV Aerospace and Defense Co. v. Official Comm. of Unsecured Creditors of LTV Steel Co. (In re Chateaugay Corp.)*, 988 F.2d 322, 325 (2d Cir. 1993) (in the bankruptcy context, "[a]n appeal should also be dismissed as moot when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable"); *Whitman Corp. v. Home Holdings, Inc. (In re Home Holdings, Inc.)*, 98 civ J690, 2001 WL 262750, at *5 (S.D.N.Y. Mar. 16, 2001) (finding appeal to be moot when, among other things, settlement was already executed and distributions had been made). In addition, the appeal is moot because it seeks relief that is duplicative of the Stay Relief Motion. *See In re 183 Lorraine St. Assocs.*, 198 B.R. 16, 24 (E.D.N.Y 1996) ("[T]he appellants' stubborn refusal to withdraw the appeal of the denial of this redundant motion is frivolous. This court hereby dismisses this appeal on the ground of mootness.").

[12] The SunCal Adversary Proceeding concerns certain SunCal Loans, some of which are included among the retransferred assets.

automatic stay is not an "injunction" that issues from the Bankruptcy Court; it arises automatically by operation of the Bankruptcy Code. *See* 11 U.S.C. § 362(a)(3) (automatic stay applies to "any act to possession . . . or to exercise control over property of the estate"); 11 U.S.C. § 541(a)(7) (property of the estate includes "[a]ny interest in property that the estate acquires after the commencement of the case"); *Carroll v. Tri-Growth Centre City, Ltd. (In re Carroll)*, 903 F.2d 1266, 1270-71 (9th Cir. 1990) (management agreement executed postpetition is property of the debtor's estate and therefore subject to the automatic stay); *N. Acres Inc. v. Hillman State Bank (In re N. Acres Inc.)*, 52 B.R. 641, 644 (Bankr. E.D. Mich. 1985) (properties reconveyed postpetition are property of the debtor's estate and subject to the automatic stay). Finally, the SunCal Debtors ignore the fact that the California bankruptcy courts held that (i) the Bankruptcy Court must have the final say concerning the scope of the Debtors' automatic stay and (ii) the SunCal Debtors must seek relief from stay in the Bankruptcy Court before pursuing their equitable subordination claim against LCPI. *In re Palmdale Hills*, 423 B.R. at 668 ("the New York bankruptcy court must have the final say as to whether the automatic stay applies to the bankruptcy case before it"), *id.* (the SunCal Debtors "may either seek relief from stay or initiate the equitable subordination action against Lehman Commercial in the New York bankruptcy case"); (Appx. 7, 388) (SunCal Debtors "may seek relief from the automatic stay in LCPI's bankruptcy case in order to proceed in the adversary").

The SunCal Debtors' injunction argument distills down to the following: the Bankruptcy Court did not have the authority to determine that the automatic stay applied to the SunCal Debtors' equitable subordination action because that action is necessary to determine the priority of the claims in their pending bankruptcy cases. Not a single case relied on by the SunCal Debtors remotely supports this proposition. Several of the cases hold that, contrary to what the

parties in those cases contended, certain federal laws—FIRREA[13] or admiralty law—did not

strip the bankruptcy courts of their jurisdiction to allow or disallow claims.  *Universal Oil, Ltd. v.*

*Allfirst Bank (In re Millenium Seacarriers, Inc.)*, 419 F.3d 83, 85-86 (2d Cir. 2001) (admiralty

law); *F.D.I.C. v. Wrapwell Corp.*, 922 F. Supp. 913, 918 (S.D.N.Y. 1996) (FIRREA); *All*

*Season's Kitchen, Inc. v. F.D.I.C. (In re All Season's Kitchen, Inc.)*, 145 B.R. 391, 392 (Bank. D.

Vermont 1992) (same).  In *Eller Industries, Inc. v. Indian Motorcycle Manufacturing, Inc.*,

another case relied on by the SunCal Debtors, the district court overseeing a receivership estate

held that it was not bound by a ***preliminary injunction*** issued by a bankruptcy court because that

injunction placed receivership assets in a constructive trust for the bankruptcy trustee's benefit.

929 F. Supp. 369, 371-72 (D. Colo. 1995).  The issues addressed in these cases have no

relevance here.[14]  The SunCal Debtors' argument cannot be squared with black-letter law

holding that a debtor's home bankruptcy court has the authority to determine the scope and

applicability of the debtor's automatic stay. *See, e.g.*, *In re Palmdale Hills*, 423 B.R. at 668 ("the

New York bankruptcy court must have the final say as to whether the automatic stay applies to

the bankruptcy case before it"); (Appx. 23, 1836) (***counsel for the SunCal Debtors stating***,

"[e]ssentially, the BAP was correct in one respect, that, procedurally, to the extent that there is a

final determination who trumps everyone insofar as the determination relative to the scope and

application of the stay, it is the home bankruptcy court").  Thus, although the Bankruptcy Court

deferred ruling on the scope of the Debtors' automatic stay, if the Bankruptcy Court had made

---

[13] Financial Institutions Reform, Recovery and Enforcement Act of 1989.

[14] *Logan v. Credit General Insurance Co. (In re PRS Insurance Group, Inc.)*, 05-50819, 2005
WL 3527032, (Bankr. D. Del. Dec. 19, 2005), yet another case relied on by the SunCal Debtors,
concerned whether the bankruptcy court should apply the doctrines of *Younger* and *Burford*
abstention and stay an equitable subordination action in light of related liquidation proceedings
in an Ohio state court where the state court did not have the jurisdiction to resolve the Trustee's
equitable subordination action brought under federal bankruptcy law. 2005 WL 3527032 at *1-2.

such ruling, it would not have exceeded the Bankruptcy Court's authority.  (*See* Opening Br. at 16).

Likewise, contrary to what the SunCal Debtors suggest, (*see* Opening Br. at 16-18), the Bankruptcy Court had jurisdiction to enter the 9019 Order.  *See* Fed. R. Bankr. P. 9019;  *In re Boyer*, 354 B.R. 14, 16 (Bankr. D. Conn. 2006) (Bankruptcy Rule 9019 grants court "core proceeding" jurisdiction to approve compromises).  The SunCal Debtors contend that the Bankruptcy Court lacked jurisdiction because the 9019 Order enjoined pending litigation between third parties – i.e., the SunCal Adversary Proceeding.  (Opening Br. at 17) (citing *Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*, 517 F.3d 52 (2d Cir. 2008); *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746 (5th Cir. 1995)).

Putting aside the fact that the 9019 Order did not enjoin anything and that the stay applies because of rulings from the California courts, *see supra* at VII(A), neither *Johns-Manville* nor *Zale Corp.* have any relevance here.  *Johns-Manville* and *Zale Corp.* concern injunctions under § 524(g) and § 105, respectively, not the automatic stay.  *Johns-Manville*, 517 F.3d at 67; *Zale Corp.*, 62 F.3d at 751.  They in no way suggest that the Bankruptcy Court did not have jurisdiction to determine the scope of the automatic stay as to post-petition property acquired by the Debtors.  *See* 11 U.S.C. § 541(a)(7) (property of the estate includes property acquired postpetition); 11 U.S.C. § 362(a)(3) (automatic stay applies to "any act to possession . . . or to exercise control over property of the estate").  In addition, in *Johns-Manville*, the bankruptcy court enjoined third-party lawsuits against a non-debtor because it was "a necessary condition for it to make a significant contribution to the Manville estate."  517 F.3d at 57.  And in *Zale Corp.*, the bankruptcy court enjoined third-party lawsuits based on a settlement provision in which the debtor agreed to indemnify a non-debtor even though there existed "no substantive basis for the

indemnification."  62 F.3d at 756.  Here, the Bankruptcy Court would have had jurisdiction to determine whether the automatic stay applied to postpetition property that the Debtors acquired pursuant to **preexisting** contractual obligations.  28 U.S.C. § 157(G) (bankruptcy court has "core proceedings" jurisdiction over "motions to terminate, annul, or modify the automatic stay").[15]

### 2.    The SunCal Debtors Waived Their Argument that the 9019 Order Violates Their Automatic Stay

The Court has already ruled that the SunCal Debtors waived their argument that the 9019 Order violated their automatic stay because they did not raise this issue below.  (Docket No. 8 at 4 (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 124 n.29 (2d Cir. 2005))). Nevertheless, the SunCal Debtors raise four new claims in an attempt to salvage this argument. (*See* Opening Br. at 18-20).  These new contentions do not justify their failure to properly raise the stay-violation issue in the Bankruptcy Court.

The SunCal Debtors note that in an objection to the revised order approving the 9019 Motion they stated in a footnote that "[t]his would also constitute a violation of the stay in the SunCal Debtors' cases, since it is designed to enable Lehman to acquire and collect a debt against the SunCal Debtors."  (Opening Br. at 19 & n.11).  But a conclusory argument without citation to any authority does not preserve an issue for appeal.  *See, e.g.*, *Wal-Mart Stores*, 396 F.3d at 124 n.29 (one sentence argument did not preserve issue for appeal).[16]

---

[15] In any event, separate and apart from the Transaction, the Bankruptcy Court had "related to" jurisdiction over the SunCal Adversary proceeding because LCPI had **preexisting** indemnification obligations to Fenway.  (*See* Appx. 1, 8); *In re Masterwear Corp.*, 241 B.R. 511, 517 (S.D.N.Y. 1999) ("Where [the debtor's] obligation to indemnify is contractual and absolute, the third party litigation is 'related to' the bankruptcy case.").

[16] *Accord Stephanatos v. United States*, 306 Fed. App'x 560, 564 (Fed. Cir. 2009) ("Arguments that are not fleshed out and are merely raised in footnotes are not preserved."); *Dale v. Chi. Tribune Co.*, 797 F.2d 458, 466 (7th Cir. 1986) (issue not preserved for appellate review because it was "raised . . . in a footnote in [the] memorandum in opposition to summary judgment").

The SunCal Debtors also maintain that the stay-violation argument was raised as a practical matter because the Bankruptcy Court knew (i) that the SunCal Debtors were chapter 11 debtors and (ii) that the Transaction would allegedly damage their reorganization efforts.  (*See* Opening Br. at 19) (citing *Nicely v. McBrayer, McGinnis, Leslie & Kirkland*, 163 F.3d 376, 381 (6th Cir. 1998)).  But arguing that the Transaction would allegedly damage the SunCal Debtors' reorganizations does not necessarily suggest that the Transaction would also violate their automatic stay.  The issues are distinct and the supposed violation of the SunCal Debtors' automatic stay was not clearly before the Bankruptcy Court.  *See Nicely*, 163 F.3d at 381 (appellant could assert argument not raised below because it was "premised upon the ***obvious implications*** that derive from the very opening words of the statute the court is called upon to apply") (emphasis added).

The SunCal Debtors next argue that they would have raised the stay-violation argument had the Bankruptcy Court not asked their counsel to "sit down."  Opening Br. at 20.  Accepting this argument requires the Court to suspend disbelief:  (i) the Bankruptcy Court asked Mr. O'Keefe, counsel for the SunCal Debtors, to sit down ***only after*** the parties had fully argued the 9019 and Stay Relief Motions, (ii) Mr. O'Keefe was asked to sit down ***only after*** he had already asked two questions about the scope of the denial from stay ruling, and (iii) ***after*** Mr. O'Keefe sat down, Mr. Miller, also counsel for the SunCal Debtors, spoke and he too failed to raise the stay-violation argument.  (*See* Appx. 23, 1853-54).  The SunCal Debtors had ample opportunity to properly raise the stay-violation argument below, but they simply failed to do so.

Finally, the SunCal Debtors contend that they may raise this argument for the first time on appeal because an order issued in violation of the stay is void and therefore may be challenged at any time.  (Opening Br. at 20).  Contrary to what the SunCal Debtors suggest,

20

courts routinely hold that failure to raise an alleged stay violation below waives that issue on appeal. *See, e.g.*, *Kartchner v. Knauss (In re Knauss)*, No. 93-16117, 1994 WL 87327, at *1 n.1 (9th Cir. May 14, 1994) ("To the extent that Knauss also contends that he is challenging the execution of the state court judgment on the ground that it violated the automatic stay in his prior bankruptcy proceeding, we decline to address the contention on appeal because it was not raised before the district court."); *Jenkins v. Hodes (In re Hodes)*, 287 B.R. 561, 569-70 (D. Kan. 2002) (same). [17]

In any event, the SunCal Debtors' stay-violation argument fails on the merits. The SunCal Debtors contend that the Transaction is an "act to recover" the Disputed Claims and that the 9019 Order was the "employment of . . . any action or proceeding against the debtor" in violation of 11 U.S.C. § 362(a)(1). (Opening Br. at 18-19.) They also maintain that "[t]hese acts violate 11 U.S.C. § 362(a)(3)." (*Id.* at 19).

These arguments demonstrate a fundamental misunderstanding of the Transaction, the 9019 Order, and the automatic stay. First, the Transaction is not an "act to recover" anything because it does not require the Debtors to take any affirmative actions against SunCal. Second, even if the Transaction were an "act to recover" the Disputed Claims –i.e., the proofs of claim that the SunCal Debtors have moved to strike—filing and prosecuting a proof of claim does not violate the automatic stay. *See Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 356 (5th Cir. 2008) ("We find no precedents in which a court has held that asserting a right to payment in a [p]roof of [c]laim constitutes a violation of the automatic stay."); *Hurst v. U.S. Bank (In re Hurst)*, 357 B.R. 782, 785 (Bankr. W.D. Ark. 2006) (even when incorrect, the filing

---

[17] The SunCal Debtors cite *Old Wayne Mutual Life Association v. McDonough*, 204 U.S. 8 (1907), for the proposition that a void order may be challenged at any time. But *Old Wayne* actually holds that a judgment issued with proper notice to the defendant is void because it violates due process and is not entitled to full faith and credit. *Old Wayne*, 204 U.S. at 23.

of a proof of claim does not violate the automatic stay).[18]  Third, the transfer of loans and related

claims is a common practice that does not violate the automatic stay.  *See In re GGSI Liquidation*

*Inc.*, 351 B.R. 529, 582 (Bankr. N.D. Ill. 2006) ("creditors are permitted to transfer a claim or

interest against a debtors' estate to a third party without violating the stay"); *see also Carnegia v.*

*Ga. Higher Educ. Assistance Corp.*, 691 F.2d 482, 483 (11th Cir. 1982) (transfer did not create a

new claim but merely constituted substitution of parties with no change in the nature of the claim

against the debtor).  Fourth, the entry of the 9019 Order was not the "employment of . . . any

action or proceeding against the debtor" because the SunCal Debtors are not a party to the 9019

proceedings.  Finally, the SunCal Debtors argue that the Transaction and the 9019 Order

constitute attempts to exercise control over estate property, but they have not identified the

alleged estate property.  (*See* Opening Br. at 18-19).  They cannot possibly contend that the

Equitable Subordination Action constitutes property of their estates because "[e]quitable

subordination claims are not property of bankruptcy estates, but rather may be brought by

individual creditors on their own behalf to achieve fair distribution of estate assets."  *In re LWD,*

*Inc.*, 342 B.R. 514, 520 (Bankr. W.D. Ky. 2006); *see also In re Andrews*, No. 02-0001, 2009 WL

1076831 (Bankr. S.D. Tex. 2009) (same).[19]

---

[18] As the Fifth Circuit observed in *Campbell*, the "filing of a [p]roof of [c]laim before a
bankruptcy court . . . is the logical equivalent of a request for relief from the automatic stay,
which cannot itself constitute a violation of the stay. . . ."  545 F.3d at 356 (citation omitted).

[19] The California Bankruptcy Court recognized that the equitable subordination claim does not
belong solely to the SunCal Debtors when it allowed Arch Insurance Company, a creditor in
their bankruptcy cases, to intervene in the Equitable Subordination Action.  *See In re Vitreous*
*Steel Prods. Co.*, 911 F.2d 1223, 1231 (7th Cir. 1990) ("individual creditors have an interest in
subordination separate and apart from the interests of the estate as a whole").

### 3.   The SunCal Debtors Waived The Argument that the 9019 Order Had to Consider the Impact of the Transaction on Their Estates

The SunCal Debtors have also waived their argument that the Bankruptcy Court failed to weigh the impact that the Transaction would have on the their estates.  (*See* Opening Br. 20-21). The Bankruptcy Court was well aware that the SunCal Debtors  believed the Transaction could affect their Equitable Subordination Action if the automatic stay applied to the loans that would be retransferred to LCPI:  "I think I know what your objection's about.  It's about having these loans come into the estate and be subject to the automatic stay and the SunCal litigation in California."  (Appx. 23, 1804).[20]  But the Bankruptcy Court also made clear that because the Transaction would only impact the SunCal Debtors' estates to the extent that the automatic stay applied to the retransferred loans, the consequences of the Transaction were more appropriately addressed in the Stay Relief Hearing, and not the 9019 Order.  (*Id.*, 1818).  Because the SunCal Debtors ***did not object*** to this procedure, (*id.*), they cannot now argue that the 9019 Order should have weighed the impact of the Transaction on their estates.  *See Millennium Aviation Servs., Inc. v. Gen. Dynamics Co.*, 335 Fed. App'x 76, 79 (2d Cir. 2009) (appellant waived argument that jury should decide prejudgment interest where it "declined to request a jury instruction on prejudgment interest and agreed to have the court decide the question").[21]

Even if the SunCal Debtors did not waive this argument, it fails on the merits because the 9019 Order simply has no adverse effect on their estates.  As the Court has already recognized, any supposed harm to the SunCal Debtors arises from the automatic stay, and not from the

---

[20] *See also* Appx. 23, 1812 ("But they're saying that this is, in part, an effort to expand the scope of the automatic stay and the SunCal litigation to these assets."), *id.* at 1813 (same).

[21] Moreover, at the hearing on the Stay Relief Hearing, the Bankruptcy Court considered any possible harms that the automatic stay may have on the SunCal Debtors' estates:  "And both parties appear to be focused most heavily on the balance of harms factor.  That's convenient because I prefer to focus on that one myself."  (Appx. 23, 1851).

Transaction itself.  (*See* Docket No. 8, 4).  But, as discussed, the 9019 Order simply does not

address the automatic stay.  *See supra* at VI(D).  Although in a separate order the Bankruptcy

Court properly denied the SunCal Debtors' relief from stay, *see* Stay Relief Order, the fact that

the SunCal Debtors did not show cause warranting relief from stay does not mean that the 9019

Order somehow unjustly harmed them.

### C.    The Bankruptcy Court's Factual Findings Are Not Clearly Erroneous

Contrary to what the SunCal Debtors contend, the record establishes that "LCPI

repurchased the Repo Assets pursuant to the MRA."  (*See* Opening Br. at 23-24).  Fenway

Capital retransferred the Repo Assets to LCPI, both of whom are the ***only*** parties to the MRA.  In

exchange LBHI, as the guarantor of LCPI's obligations under the MRA, surrendered the CP

Notes as payment of the repurchase price under the MRA.  The SunCal Debtors argue that these

steps were not taken pursuant to the MRA because the MRA was terminated upon consummation

of the Transaction.  But the MRA provides that either party may terminate the MRA upon notice,

so long as the termination does not affect pending transactions.  (Appx. 11, 799) ("This

Agreement may be terminated by either party upon giving written notice to the other, except this

Agreement shall, notwithstanding such notice, remain applicable to any Transactions then

outstanding.").  The SunCal Debtors also argue that the MRA required LCPI to repurchase the

loans in cash.  Although the MRA provides that the repurchase price must be paid with

"immediately available funds," the SunCal Debtors erroneously equate such funds with cash.

*See* Black's Law Dictionary (2d Pocket Ed.) (defining funds as "a sum of money or ***other liquid***

***assets*** established for a specific purpose) (emphasis added).[22]  Because the MRA expressly

---

[22]  The Debtors have waived their belated attempt to challenge the economics of the Transaction.
(Opening Br. at 24).  They repeatedly declined to cross-examine Mr. Fitts, and in fact, conceded
that they did not have standing to question the merits of the Transactions. (Appx. 23, 1806).

contemplates that it may be terminated after completion of a transaction and that the repurchase price may be paid using instruments other than cash, the Bankruptcy Court's finding that "LCPI repurchase the Repo Assets pursuant to the MRA" was not clearly erroneous. *Calpine Corp.*, 354 Fed. App'x at 480 (factual findings must be affirmed unless clearly erroneous).

The Bankruptcy Court also did not err in finding that LBHI (i) became fully subrogated to the claims of Fenway and (ii) succeeded to any and all of Fenway's liens and security interests in the Repo Assets. (Opening Br. at 24-25). The SunCal Debtors' arguments misconstrue the MRA, the commercial paper program, and the Transaction. Before the Transaction, LBHI had a preexisting security interest in the Repo Assets because the CP Notes were ultimately secured by them. Under the Transaction, as guarantor of LCPI's obligations under the MRA, LBHI surrendered the CP Notes as payment of repurchase price under the MRA. *See supra at* VI(B). As a result, LBHI became subrogated to Fenway's liens and security interests in the Repo Assets. *Id.*; s*ee In re J. Menist Co.*, 289 F. 229, 231 (2d Cir. 1923) ("Subrogation is the doctrine which enables a party secondarily liable and who has paid the debt to stand in the place of the creditor and avail himself of the benefit of any securities or remedies which the original creditor held as against the principal debtor and by the use of which the party paying may be made whole.").[23] Thus, the Bankruptcy Court did not "create liens out of thin air." (Opening Br. at 24-25). It preserved for the benefit of LBHI's separate estate the liens and security interests that LBHI always had in the Repo Assets. *Calpine Corp.*, 354 Fed. App'x at 480 (factual findings must be affirmed unless clearly erroneous).

## CONCLUSION

For the reasons stated above, the 9019 Order should be affirmed.

---

[23] The subrogation involves three parties – LCPI, LBHI, and Fenway. (*See* Opening Br. at 24).

Dated: July 19, 2010
      Houston, Texas

/s/ Alfredo R. Pérez
Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77027
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Attorneys for Appellees

## CERTIFICATE OF SERVICE

I, Alfredo R. Pérez, hereby certify that on July 19, 2010, I caused to be served by the foregoing *Response to SunCal Appellants' Opening Brief Re Appeal of Order Approving Debtors' Motion Pursuant to Bankr. Rule 9019 for Authority to Compromise Controversy in Connection with a Repurchase Transaction with Fenway Capital, LLC and a Commercial Paper Program with Fenway Funding, LLC* via electronic mail on those parties listed on <u>Exhibit A</u>, and via overnight delivery on those parties listed on <u>Exhibit B</u>.

Dated: July 19, 2010
      Houston, Texas

                                    /s/ Alfredo R. Pérez        
                                    Alfredo R. Pérez

## **Exhibit A**

sokeefe@okeefelc.com
plianides@winthropcouchot.com
pj@winthropcouchot.com
sconnor@winthropcouchot.com
dodonnell@milbank.com

## Exhibit B

Winthrop Couchot Professional Corporation
660 Newport Center Drive
Fourth Floor
Newport Beach, CA 92660
Attn: Sean A. O'Keefe, Esq. and Paul J.
Couchot, Esq.


Miller Barondess, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles CA 90067
Attn: Louis R. Miller, Esq. and Martin H.
Pritikin, Esq.


Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005
Attn: Evan R. Fleck and Dennis
C. O'Donnell


Office of the United States Trustee
33 Whitehall Street, 21st Floor
New York, New York 10004
Attn: Andrew D Velez-Rivera, Paul
Schwartzberg, Brian Masumoto, Linda
Rifkin, Tracy Hope Davis